Randy Renick, Esq. [S.B. #179652]
Joshua Piovia-Scott, Esq. [S.B. #222364]
HADSELL STORMER KEENY
        RICHARDSON & RENICK, LLP
128 N. Fair Oaks Avenue
Pasadena, California 91103
Telephone:  (626) 585-9600
Facsimile:  (626) 577-7079
E-mail: rrr@hskrr.com

[Counsel for Plaintiffs Continued on Signature Page]
Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GENARO ZENDEJAS MORALES, RICKY SILVA and CHRISTIAN SANCHEZ, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> ARAMARK CORPORATION, a Delaware Corporation formerly known as ARAMARK SERVICES, INC.; ARAMARK SPORTS, INC., ARAMARK SPORTS, LLC and DOES 1-200, inclusive, <br><br> Defendants. | MASTER FILE NO. 2:09-cv-05565 JHN MLGx <br><br> **NOTICE OF MOTION; MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT AGREEMENT** <br><br> **Date: April 19, 2010** <br> **Time: 2:00** <br> **Courtroom: 790 Roybal** |
| KRISTINA LE-NGUYEN, an individual, and CAMILLE LEWIS, an individual, on behalf of themselves, and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> ARAMARK CORPORATION; a Delaware Corporation; and DOES 1 through 100, Inclusive, <br><br> Defendants | Case No. 8:09-cv-01037-FMC-MLGx |

1

1  **TO THE COURT AND TO ALL PARTIES AND THEIR ATTORNEY(S) OF**
2  **RECORD:**
3       **PLEASE TAKE NOTICE** that on April 19, 2010, at 2:00 p.m. or as soon
4  thereafter as the matter may be heard in the courtroom of the Honorable Jacqueline H.
5  Nguyen of the above-entitled court, located in Courtroom 790, 255 East Temple Street,
6  Los Angeles, CA 90012, Plaintiffs will move for preliminary approval of a class action
7  settlement in this case.  The motion will be based on the Federal Rules of Civil Procedure,
8  the foregoing notice, points and authorities, and declarations and exhibits filed
9  concurrently herewith, and the pleadings, records and files in this action.
10
11  DATED:  April 5, 2010                    Respectfully submitted,
12                                           HADSELL STORMER KEENY
                                             RICHARDSON & RENICK, LLP
13
14
                                         By _____/s/_____
15                                          Randy Renick
                                            Attorneys for Plaintiffs
16
17
18
19
20
21
22
23
24
25
26
27
28

2

1

# TABLE OF CONTENTS

2

MEMORANDUM OF POINTS AND AUTHORITIES.. . . . . . . . . . . . . . . . . . . . . . 1

3

    I. INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

4

    II. BACKGROUND.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

5

        A.    PROCEDURAL BACKGROUND. . . . . . . . . . . . . . . . . . . . . . . . . . . 2

6

        B.    DEFENDANTS.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

7

        C.    CLASS REPRESENTATIVES.. . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

8

        D.    DISCOVERY AND INVESTIGATION CONDUCTED

9

            BY PLAINTIFFS.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

10

        E.    SETTLEMENT TERMS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

11

    III.    ARGUMENT.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

12

        A.    THE SETTLEMENT AWARD IS FAIR, REASONABLE,

13

            AND ADEQUATE.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

14

            1.    Preliminary Approval of The Settlement is Proper . . . 10

15

            2.    ADDITIONAL COMPENSATION FOR NAMED

16

               PLAINTIFFS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

17

            3.    THE PROPOSED NOTICE TO CLASS MEMBERS IS

18

               ADEQUATE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

19

            4.    CONDITIONAL CLASS CERTIFICATION IS PROPER.. . . . . 15

20

            5.    A CLASS ACTION IS SUPERIOR TO OTHER AVAILABLE

21

               METHODS FOR THE FAIR AND EFFICIENT ADJUDICATION

22

               OF THIS CASE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

23

            6.    THE COURT SHOULD APPOINT THE PLAINTIFFS'

24

               CURRENT COUNSEL AS COUNSEL FOR THE CLASS. . . . . 22

25

    IV.  CONCLUSION.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

26

27

28

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Adames v. Mitsubishi Bank, Ltd.,*
   133 F.R.D. 82 (E.D.N.Y. 1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   17

*Amalgamated Transit Union Local 1309 v. Laidlaw Transit Services,*
   2009 U.S. Dist. LEXIS 7171 (S.D. Cal. 2009). . . . . . . . . . . . . . . . . . . . . . . 16

*Amchem Prods., Inc. v. Windsor,*
   521 U.S. 591, 117 S. Ct. 2231 (1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Armstrong v. Board Of School Dir.'s,*
   616 F.2d 305 (7th Cir. 1980). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1,10

*Armstrong v. Board of School Directors,*
   471 F. Supp. 800 (E.D. Wis. 1979). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Blackwell v. SkyWest Airlines, Inc.,*
   245 F.R.D. 453 (S.D. Cal. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Bradburn Parent Teacher Store, Inc. v. 3M,*
   513 F. Supp. 2d 322 (E.D. Pa..2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Bynum v. District of Columbia,*
   412 F. Supp. 2d 73 (D. D.C. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Chun-Hoon v. McKee Foods Corp.,*
   2006 U.S. Dist. LEXIS 82029 (N.D. Cal.2006). . . . . . . . . . . . . . . . . . . . . . 16

*Cotton v. Hinton,*
   559 F.2d 1326 (5th Cir. 1977). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Cruz v. Dollar Tree Stores, Inc.,*
   2009 U.S. Dist. LEXIS 46855 (N.D. Cal. 2009). . . . . . . . . . . . . . . . . . . . . . 16

*Cullen v. Whitman Medical Corp.,*
   197 F.R.D. 136 (E.D.Pa. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Enterprise Energy Corp. v. Columbia Gas Transmission Corp.,*
   137 F.R.D. 240 (S.D.Ohio,1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*In re FPI/Agretech Securities Litigation,*
   105 F.3d 469 (9th Cir. 1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Felzen v. Andreas,*
   134 F.3d 873 (7th Cir. 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*Forrand v. Federal Express Corp.,*
   2009 U.S. Dist. LEXIS 22912 (C.D. Cal. Feb. 18, 2009). . . . . . . . . . . . . . 17

*Gay v. Waiters' & Dairy Lunchmen's Union,*
    489 F. Supp. 282 (N.D. Cal. 1980)................................. 17

*Goldsby v. Adecco, Inc.,*
    2009 U.S. Dist. LEXIS 10799 (N.D. Cal. Feb. 4, 2009). .............. 17

*Hanlon v. Chrysler Corp.,*
    150 F.3d 1011 (9th Cir. 1988). .............................. passim

*Harrington v. City of Albuquerque,*
    222 F.R.D. 505 (D.N.M. 2004)................................. 22

*Heffelfinger v. Electric Data System Corp.,*
    2008 U.S. Dist. LEXIS 5296 (C.D. Cal. 2008)...................... 16

*Ingram v. The Coca-Cola Co.,*
    200 F.R.D. 685 (N.D.Ga.2001)................................. 13

*In re Jiffy Lube Securities Litigation,*
    Fed. Sec. L. Rep. (CCH) ¶ 94,859 (D.Md. 1990)..................... 11

*Jordan v. County of Los Angeles,*
    (9th Cir.) 669 F.2d 1311, 459 U.S. 810, 103 S. Ct. 35 (1982).......... 17

*Kamar v. Radio Shack Corp.,*
    254 F.R.D. 387 (C.D. Cal. 2008). .............................. 19

*Krzesniak v. Cendant Corp.,*
    2007 U.S. Dist. LEXIS 47518 (N.D. Cal. 2007). .................... 16

*Lerwill v. Inflight Motion Pictures, Inc.*
    582 F.2d at 507, 512 (9th Cir. 1978). .......................... 21

*Linney v. Cellular Alaska Partnership,*
    151 F.3d 1234. ............................................ 11

*Northwestern Fruit Co. v. A. Levy A. J. Zentner Co.,*
    116 F.R.D. at 384, 389 (E.D. Cal. 1986). ........................ 21

*Officers for Justice v. Civil Service Com'n,*
    688 F.2d 615 (9th Cir. 1982). ................................ 12

*Otsuka v. Polo Ralph Lauren Corp.,*
    251 F.R.D. 439 (N.D. Cal. 2008). .............................. 16

*Perez v. Safety-Kleen System,*
    253 F.R.D. 508 (N.D. Cal. 2008). .............................. 16

*Powers v. Eichen,*
    229 F.3d 1249 (9th Cir. 2000). ................................. 8

-iii-

*Romero v. Producers Dairy Foods, Inc.,*
   235 F.R.D. 474 (E.D. Cal. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Ross v. US Bank National Association,*
   2009 U.S. Dist. LEXIS 116875 (N.D. Cal. 2009). . . . . . . . . . . . . . . . . . . 16

*Rutter & Wilbanks Corp. v. Shell Oil Co.,*
   314 F.3d 1180 (10th Cir. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*In re S. Ohio Correctional Facility,*
   175 F.R.D. 270 (S.D.Ohio 1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Smith v. Tower Loan of Mississippi, Inc.,*
   216 F.R.D. 338 (D.Miss. 2003).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*In re Sugar Industry Antitrust Litigation,*
   73 F.R.D. at 322, 336 (E.D. Pa. 1976). . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Tennie v. City of New York Dep't of Soc. Servs.,*
   No. 83 Civ. 0884 (MEL) (S.D.N.Y. Jan. 30, 1987). . . . . . . . . . . . . . . . . 18

*Tierno v. Rite Aid Corp.,*
   2006 U.S. Dist. LEXIS 71794 (N.D. Cal. 2006). . . . . . . . . . . . . . . . . . . . 16

*Torrisi v. Tucson Electric Power Co.,*
   8 F.3d 1370 (9th Cir. 1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Van Vraken v. Atlantic Richfield Co.,*
   901 F. Supp. 294 (N.D.Cal.1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *13*

*Wang v. Chinese Daily News, Inc.,*
   231 F.R.D. 602 (C.D. Cal. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Wehner v. Syntex Corp.*
   117 F.R.D. 641 (N.D. Cal. 1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Wellman v. Dickinson,*
   497 F. Supp. 824 (S.D.N.Y. 1980). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Wiegele v. FederalEx Ground Package System,*
   2008 U.S. Dist. LEXIS 10246 (S.D. Cal. 2008).. . . . . . . . . . . . . . . . . . . . 16

*Wilkerson v. Martin Marietta Corp.,*
   171 F.R.D. 273 (D.Colo. 1997).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

## STATE CASES

*Brinker Restaurant Corporation v. Superior Court,*
   85 Cal. Rptr. 3d 688 (Oct. 22, 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Brown v. Federal Express Corp.,*
   2008 WL 906517 (C.D. Cal. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

-iv-

*Classen v. Weller,*
  145 Cal. App. 3d 27 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Collins v. Rocha,*
  7 Cal. 3d 232 (1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Crab Addison, Inc. v. Superior Court,*
  169 Cal. App. 4th 958 (2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Daar v. Yellow Cab Co.*
  67 Cal. 2d 695 (1967) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Farley v. Baird, Patrick & Co., Inc.,*
  1992 WL. 3216325 (S.D.N.Y. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Franco v. Athens Disposal Co., Inc.*
  171 Cal. App. 4th 1277 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Gentry v. Superior Court,*
  42 Cal. 4th 443 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15,16

*Hypolite v. Carleson,*
  52 Cal. App. 3d 566 (1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Kenny v. Supercuts, Inc.,*
  2008 WL. 2265194 (N.D. Cal. June 2, 2008) . . . . . . . . . . . . . . . . . . . . . . . . . 16

*RMED Intern., Inc. v. Sloan's Supermarkets, Inc.,*
  2003 WL. 21136726 (S.D. N.Y. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Reyes v. Board of Supervisors,*
  196 Cal. App. 3d 1263, 1274-75 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Richmond v. Dart Indus. Inc.,*
  29 Cal. 3d 462 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Sav-On Drug Stores, Inc. v. Superior Court,*
  34 Cal. 4th 319 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*In re Vitamins Antitrust Litigation,*
  2001 WL. 856292 (D.D.C. July 25, 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

## FEDERAL STATUTES

Fed. R.Civ.P. 23(b)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Fed. R. Civ. P. 23(c)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Fed. R. Civ. P. 23(c)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Fed. R. Civ. P. 23(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

**STATE STATUTES**

Cal. App.4th 715. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Cal. Labor Code § 203.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Cal. Labor Code section 204. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Cal. Labor Code section 226. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Cal. Labor Code section 226.7. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

**DOCKETED CASES**

*Brown v. Aramark Sports, LLC,*

    Case No. 00180158 (filed in Superior Court on September 4, 2009). . . . . 2

**SECONDARY SOURCES**

*Eisenberg & Miller, Incentive Awards to Class Action Plaintiffs: An Empirical Study,*

    53 UCLA L. Rev. 1303, 1307 (2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

Plaintiffs seek preliminary approval of the proposed $3.9 million class action settlement ("Settlement") of wage and hour claims brought on behalf of hourly workers employed by Aramark Sports, LLC (formerly Aramark Sports Inc.), Aramark Corporation, Aramark Sports and Entertainment Services, LLC, Aramark Entertainment, LLC, ARAMARK SM Management Services, Inc., Aramark Services, Inc., Aramark Management Services LP, Aramark Facility Services, LLC, Aramark Rail Services, LLC, Aramark Refreshment Services, LLC, Travel Systems, LLC, Aramark Business Facilities, LLC, Aramark Intermediate Holdco Corporation, Aramark Holdings Corporation, Aramark SMMS, LLC in California since July 29, 2005.[1] The settlement was reached after Plaintiffs conducted a full and complete investigation and engaged in substantial discovery sufficient to allow Plaintiffs' counsel to determine the likely range of outcomes should this matter go to trial. The resolution was the result of arms-length negotiations and a full day mediation with a highly skilled and experienced mediator and is an excellent result in light of all the relevant circumstances. Accordingly, Plaintiffs respectfully request that the Court grant preliminary approval of the Settlement and enter the proposed order filed concurrently herewith.

Because the settlement is within the range of possible approval to justify sending notice of the settlement to class members and to schedule final approval proceedings, preliminary approval is proper. *See Armstrong v. Bd. of School Dir.'s*, 616 F. 2d 305, 314 (7th Cir. 1980), overruled on other grounds by, *Felzen v. Andreas*, 134 F.3d 873, 875 (7th Cir. 1998)); *Manual for Complex Litigation* (Fourth) § 13.14 at 173 ("First, the judge reviews the proposal preliminarily to determine whether it is sufficient to warrant public notice and a hearing. If so, the final decision on approval is made after the hearing.").

---

[1] Although the various defendants are separate business entities, for ease of reference they are collectively referred to as "Aramark."

1  Accordingly, Plaintiffs seek an order: (i) granting preliminary approval of the Settlement;
2  (ii) certifying the settlement class, (iii) approving the manner and forms of giving notice
3  to the Class and a proposed Claim Form; and (iv) establishing the timetable set forth
4  herein for consummation of the Settlement.

5                                    **II. BACKGROUND**

6  **A.    PROCEDURAL BACKGROUND**

7          Over the past nine months, four wage and hour class actions have been brought
8  against Aramark Sports LLC, Aramark Sports Inc., Aramark Services, Inc., Aramark
9  Corporation, and Aramark SM Management Services, Inc., (collectively "Aramark" or
10 "Defendants"). The first action alleging the primary claims at issue was filed on July 29,
11 2009, as *Morales, et al. v. Aramark Corporation, et al.,* Case No. CV09-5565 CBM
12 (MLGx) ("*Morales*"). Subsequently the matter of *Le-Nguyen, et al. v. Aramark*
13 *Corporation.,* Case No. SACV09-1037 (Anx) was filed in Orange County Superior Court
14 on August 5, 2009 and then removed to District Court September 9, 2009. This Court
15 consolidated the *Le-Nguyen* action with the *Morales* action on December 2, 2009, and
16 appointed Morales' counsel, Hadsell Stormer Keeny Richardson & Renick, LLP
17 ("HSKRR") as Interim Lead Counsel. (Docket No. 35). (Renick Decl. ¶¶ 3-4).

18         Two other cases, *Holtz v. Aramark SM Management Services, Inc.*, Case No.
19 SACV09-840 JVS (JCX) (filed in Superior Court June 18, 2009, removed to District
20 Court on July 20, 2009) and *Brown v. Aramark Sports, LLC*, Case No. 00180158 (filed in
21 Superior Court on September 4, 2009) were filed and subsequently dismissed without
22 prejudice. (Renick Decl. ¶ 5). Holtz and Brown were included as Plaintiffs in the First
23 Amended Consolidated Complaint filed January 5, 2010. This proposed Settlement
24 brings all of the cases to a close. (Renick Decl. ¶ 5).

25 **B.    DEFENDANTS**

26         The class members that are subject to this settlement work or worked in one
27 and/or two different Aramark lines of business: 1) Sports and Entertainment Group; and

28

                                           2

1  2) Business and Industries Group (Renick Decl. ¶ 7).

2      Aramark's Sports and Entertainment Group provides food, beverage and retail

3  services such as catering, restaurant operations, concessions, in-seat dining, hawking, and

4  merchandise concession stand sales at sports and entertainment venues in California.

5  During the class period, Aramark  has operated those services at approximately 30

6  locations in California.  In Southern California, the locations include Angel Stadium, the

7  Honda Center, Los Angeles Convention Center, Anaheim Convention Center, the Great

8  Western Forum, the Greek Theatre, the Galen Center, Verizon Wireless Amphitheater

9  and Petco Park, among others.   In Northern California, they  include: HP Pavilion,

10  Garden City Casino, and Santa Clara Convention Center, among others.  (Renick Decl. ¶

11  8).

12      The Business and Industries Group provides food, retail, facility and logistical

13  services that include management and operations of cafeterias, coffee kiosks and sundries

14  shops, as well as limited catering services on the campuses of approximately 130 different

15  corporations in California: including AT&T, Metropolitan Transit Authority (MTA),

16  Northrup Grumman, Anheuser-Busch Corporation, Boeing Corporation, Neutrogena,

17  KLA-Tenco, AMD and Nvidia.  These locations typically  employ a dozen or so

18  employees on a full time basis.  Those employees serve as servers, bartenders, concession

19  stand workers, concessions stand leads, warehouse workers, cooks, utility workers,

20  kitchen workers, cashiers, catering workers, cafeteria workers, dishwashers, hawkers, and

21  other roles.

22      Given the part time nature of much of the work, the turn-over of Aramark

23  employees is extremely high and as a result, the class which includes former and current

24  employees numbers 23,000.[2]  (Renick Decl. ¶¶ 10-11).

25

26  [2] Because Defendants' workforce includes thousands of seasonal, part-time, and temporary
workers, approximately 1,000 of whom worked only one week or less for any of the ARAMARK
27  Entities, the size of the putative class -- in terms of full-time equivalent employees for the four
year statute of limitations period -- is approximately 15% the size of the total putative class here.
28

3

**C. ___CLASS REPRESENTATIVES**

Genaro Zendejas Morales, Ricky Silva, Christian Sanchez, Kristina Le-Nguyen, Camille Lewis, Irby Brown and Michelle Holtz are current or former employees of the Aramark Defendants and were employed as hourly employees during the class period by Aramark in California.   Plaintiffs contend that each of the Class Representatives was denied some or all of the meal and rest breaks to which they were entitled under California law, or were denied the opportunity to take their breaks until the end of their eight hour shift.  Moreover, each Class  Representative claims he/she was not paid one hour  of premium pay on those occasions when denied breaks as provided by law. (Renick Decl. ¶ 12).

Plaintiffs contend that class members, including the Class Representatives,  were not reimbursed for expenses they were required to incur in the performance of their jobs, including cell phones and shoes.  In addition to  allegations that Defendants denied breaks, and did not  pay for all of the hours worked, Plaintiffs contend that Defendants failed to provide each of the Representatives with a wage statement that accurately reflects the hours worked or the proper rate of pay.  For those employees who were terminated, including Morales, Plaintiffs claim that Defendants failed to pay all of the wages due  at the time of termination resulting in waiting time penalties pursuant to Labor Code § 203.   (Renick Decl. ¶ 13).

**D.___DISCOVERY AND INVESTIGATION CONDUCTED BY PLAINTIFFS**

Prior to the filing of the lawsuit, Lead Counsel spent six months investigating Plaintiffs' claims.  During that time, Hadsell Stormer Keeny Richardson & Renick, LLP interviewed dozens of putative class members across the state, gathering information and documents related to the claims at issue.  At the conclusion of that time, Plaintiffs filed suit setting forth those claims which had been substantiated through the pre-filing investigation. (Renick Decl. ¶ 14).

After filing, counsel for Plaintiffs and Defendants discussed the status of the case

4

1   and the prospects of conducting a mediation to determine if resolution was possible at the

2   early stages of the litigation.  Plaintiffs insisted that substantial discovery was required so

3   that both sides would be fully informed of the Plaintiffs' likelihood of prevailing at trial

4   and the range of outcomes that could be expected before they would commit to

5   mediation.        Through substantial informal discovery occurring over a period of many

6   months, Defendants provided Plaintiffs' counsel with thousands of documents,

7   voluminous data, analysis, sample testimony, policies, collective bargaining agreements,

8   samples and spreadsheets reflecting employees' time worked, and supporting records,

9   including time records, meal period logs and other evidence of meal periods for sampling

10   periods during the class period for  various of  Defendants' components/locations in

11   California, and compensation information and data for the vast majority of the proposed

12   class.  This data included two spreadsheets, one for certain Sports and Entertainment sites

13   and one for the Business and Industries Group sites, that were prepared especially for this

14   litigation, as well as the underlying documents supporting the data in the spreadsheets.

15   These spreadsheets include sampling data for certain time periods throughout the statute

16   of limitations period. The Sports and Entertainment spreadsheet reflects a sampling of

17   time entry and meal period records from all of the following Sports and Entertainment

18   sites: Angel Stadium, Honda Center, Los Angeles Convention Center, Anaheim

19   Convention Center, Garden City Casino, the Forum, the Greek Theater, HP Pavilion, and

20   the Santa Clara Convention Center.  The Business and Industries  Group spreadsheet

21   includes samplings from all of the following sites: Anheuser Busch, Advanced Micro

22   Devices, AT&T-CBA, AT&T-Pasadena, AT&T-San Ramon, Boeing Seal Beach, Boeing

23   Huntington Beach, Boeing Long Beach, KLA-Tencor/KLA, KPMG, Metropolitan Transit

24   Authority, Neutrogena, Northrop Grumman El Segundo (aka "Candle Corporation"),

25   Northrup Grumman Redondo Beach, Nvidia Symantec  Cupertino and Symantec

26   Mountain View. (Renick Decl. ¶¶ 15-16 ).

27        In addition to the payroll and timecard data, Aramark produced and Plaintiffs

28

5

1   reviewed over 7,000 pages of meal period logs, meal period schedules, Aramark's
2   policies and collective bargaining agreements.  Plaintiffs also interviewed and obtained
3   written declarations from dozens of class members.  Based on all of the evidence
4   obtained, Plaintiffs developed a sophisticated damage analysis modeling the damages
5   Plaintiffs contended they were likely to recover at trial applying a number of different
6   assumptions and scenarios. (Renick Decl. ¶ 17).

7        Plaintiffs retained Todd Stefan of Setec Investigations to organize, maintain and
8   evaluate the timecard and payroll data.  For the more than 68,000 shifts for which he was
9   provided data, Mr. Stefan determined on a location specific basis: 1) the number of shifts
10  in the pay period; 2) number of those shifts that lasted more than 5 hours; 3) the number
11  of those shifts where no meal period was recorded; 4) the number of those shifts where
12  the  meal period recorded was less than 30 minutes; 5) the number of those shifts where
13  the meal  period was taken before or at the beginning of the shift; and 6) the number of
14  those shifts where the meal period was taken just prior to or at the end of the shift.  Mr.
15  Stefan was then able to apply his findings for the sample pay periods to the entire 4 ½
16  year class period for all locations in the sample. (Renick Decl. ¶ 18).

17       On January 6, 2010, the parties attended a mediation before Mark Rudy of Rudy,
18  Exelrod, Zieff & Lowe, LLP, a highly regarded private mediator who is intensely familiar
19  with wage-and-hour class action lawsuits.  At the mediation, the parties exchanged
20  detailed information concerning the claims, defenses and alleged damages at issue.  Based
21  upon the investigation and discovery completed by Plaintiffs, the parties were able to
22  reach a settlement at the mediation.  The settlement was ultimately reduced to writing and
23  executed by all of the parties.   (Renick Decl. ¶ 20).

24  **E. ___ SETTLEMENT TERMS**

25       **1.    CLASS CERTIFICATION.**

26       The parties have agreed to a proposed settlement class which consists of "all
27  current and former employees of the Aramark Entities who were classified as non-exempt

28

6

1  (i.e., overtime eligible) and who work or worked for any Aramark Entities or their

2  predecessors, assigns and/or related companies at locations in the Sports & Entertainment

3  and/or Business and Industries Group lines of business in California at any time between

4  July 29, 2005 through the Preliminary Approval Date." (Exh. "A," ¶2.7 to Renick

5  Declaration).

6      **2.   TOTAL SETTLEMENT FUND.**

7      The total settlement amount is Three Million, Nine Hundred Thousand Dollars

8  ($3,900,000).  The California Labor and Workforce Development Agency will be paid

9  $39,000 of the settlement amount for potential PAGA penalties.  (Exh. "A," ¶¶ 2.21,

10  6.2.1, and 6.5.1 to Renick Declaration).

11      **3.   PAYMENT OF STANDARD CLAIMS.**

12      As set forth in detail in the Settlement Agreement attached as Exhibit A to Renick

13  Declaration, the primary mechanism for Settlement involves cash payment to members of

14  the Plaintiff class according to a formula.  The formula allows for payment of a

15  percentage of the net recovery to each class member who files a valid claim based upon

16  the number of weeks worked during the class period ("work weeks").  Work weeks of

17  less than 25.1 hours (part-time work week) will be treated as one-half of a work week.

18  (Exh. "A," ¶ 6.7.1(a)-(b) to to Renick Declaration).

19      **4.   ADDITIONAL COMPENSATION FOR ACTIVE LITIGANTS.**

20      In recognition of the  risks and burdens undertaken by the named Plaintiffs and

21  those class members who actively participated in the litigation, mediation and settlement

22  of this case, the settlement provides additional compensation in  an amount  not to exceed

23  $7,500 for each to the 7 named Plaintiffs. This  payment shall be in addition to whatever

24  portion of the settlement proceeds each such individual is otherwise entitled to receive.

25  The enhancements are intended to compensate these individuals fairly in relationship to

26  the rest of the class in light of the additional burdens and risks they have undertaken by

27  assisting in the prosecution of the lawsuit. (Exh. "A," ¶ 6.3.1 to Renick Declaration).

28

**MOTION FOR PRELIMINARY APPROVAL
OF SETTLEMENT AGREEMENT**

5. **ATTORNEY'S FEES AND COSTS.**

The settlement agreement provides for the payment of attorneys' fees and reasonable litigation costs in an amount not to exceed 30% of the total settlement amount, plus the costs of claims administration. Plaintiffs, however, intend to limit the fee request to 25%, plus costs not to exceed 30% in total. Payment of these sums shall extinguish Plaintiffs' claims for all costs and for all fees incurred for all work performed by counsel in this case from its inception through its conclusion.

The fee award contemplated by the Settlement Agreement in this case is presumptively reasonable under Ninth Circuit precedent. The Court has broad discretion in assessing the reasonableness of attorneys' fees in class actions. *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000); *In re FPI/Agretech Securities Litigation*, 105 F.3d 469, 472 (9th Cir. 1997).

This settlement was achieved after months of investigation and discovery, protracted negotiation, and ultimately mediation. Plaintiffs' counsels' work is not yet complete, since they will surely spend many hours overseeing and participating in the claims administration process before the final checks are distributed to class members. The work performed to date has been substantial and, the parties believe, has resulted in a settlement with great potential benefit to the class.

6. **ADMINISTRATION OF CLAIMS.**

The parties have agreed to retain Gilardi & Co. LLC, ("Gilardi" or "Administrator"), of Novato, California to act as the impartial claims administrator. Gilardi will be retained to send out notice to the class members, to collect the claim forms, to resolve any challenges any party lodges to all or part of a particular claim, and to mail the settlement checks to the authorized claimants. Gilardi's fees, estimated at $102,000, are to be paid out of settlement fund.

7. **NOTICE TO THE CLASS.**

The Settlement Agreement contemplates, among other things, that this Court will

1 certify a settlement class and grant preliminary approval of the settlements. After

2 preliminary approval and class certification, the Settlement Agreement requires that the

3 Notice Packet will be sent via first class mail to class members within 45 business days of

4 preliminary approval. The Notice will inform potential class members of the terms of the

5 Settlement Agreement, their right to opt out of the class, their right to object to the

6 settlement, and their right to be heard at the final hearing on the fairness of the settlement.

7 For each member of the Class, they will be provided an individualized claim form

8 that will include the number of weeks worked during the class period. This information

9 will form the basis for determining each individual claimant's share of the settlement

10 proceeds. Providing this data to the class members is intended to make it as easy as

11 possible for class members to participate in the settlement.

12 The Notice advises each class member that they have four (4) options. Those

13 options are: (1) to submit a proof of claim form, in order to receive payment; (2) to

14 request exclusion in order to be excluded from the settlement; (3) to object to the

15 proposed settlement by filing a written objection and appearing at the Motion for Final

16 Approval; or (4) to do nothing and lose any rights they may have as a class member in

17 this case.

18 Prior to sending the Notice and Claim Form (collectively "Notice Packet") to

19 class members, Gilardi will first update all of the addresses provided by Aramark by

20 using the United States Post Office's Change of Address Database. As to those notices

21 returned as undeliverable, the Claims Administrator will conduct a reasonable

22 investigation, including a Skip Trace, and send additional notices to all recent addresses

23 obtained through that process. In addition, 30 days after the Notice Packet has been

24 mailed, Gilardi will then perform a skip trace for all former employees who have not at

25 that time filed a claim or otherwise contacted Gilardi. Notice Packets will then be sent to

26 any new addresses. The parties are confident that this notice by mailing to the last

27 known address and to more recent addresses obtained through reasonable investigation is

28

9

the best means available to reach class members.

**8.   PROPOSED SCHEDULE**

The following schedule sets forth a proposed sequence for the relevant dates and deadlines, assuming this Court grants preliminary approval of the Settlement. This schedule is also stated in the proposed Order filed concurrently herewith.

| Within 21 business days after Preliminary Approval: | Defendants to provide the Claims Administrator with the name, social security number, number of full time and part time weeks worked during the class period, last known mailing address and phone number of every Class Member. [June 1, 2010, if Preliminary Approval granted on May 3, 2010] |
|---|---|
| 45 business days after Preliminary Approval: | Class Notice, and Claim Form mailed to all Class Members. [July 5, 2010 if Preliminary Approval granted on May 3, 2010] |
| 45 calendar days after Class Notice is mailed: | Last day for class members to file written objections with the Court or to opt-out of the class period. [August 19, 2010 if Preliminary Approval granted on May 3, 2010] |
| 90 calendar days after Class Notice is mailed: | Last day for class members to submit claims. [October 4, 2010 if Preliminary Approval granted on May 3, 2010] |
| _____, 2010. | Final Fairness and Motion for Fees and Costs Hearing. [September 27, 2010, if Preliminary Approval granted on May 3, 2010] |

## III. ARGUMENT

**A.   THE SETTLEMENT AWARD IS FAIR, REASONABLE, AND ADEQUATE**

**1.   Preliminary Approval of The Settlement is Proper**

The approval of class action settlements is a two-step process under Fed. R. Civ. P. 23(e). Preliminary approval requires only that the terms of the proposed settlement fall within the "range of possible approval." *Armstrong*, 616 F. 2d at 314. It amounts to a determination that the terms of the proposed settlement warrant consideration by members of the class and a full examination at a final approval hearing. *Manual for Complex Litigation* (Fourth) § 13.14 at 173. After notice to the class, preliminary approval is followed by a review of the fairness of the settlement at final approval, and, if appropriate, a finding that it is "fair, reasonable and adequate." *Hanlon v. Chrysler Corp.*,

1  150 F.3d 1011, 1027 (9th Cir. 1988).  Because it is provisional, courts grant preliminary

2  approval where the proposed settlement lacks "obvious deficiencies" raising doubts about

3  the fairness of the settlement.  *See e.g., In re Vitamins Antitrust Litig.,* 2001 WL 856292,

4  at *4 (D.D.C. July 25, 2001) (quoting *Manual for Complex Litigation* (Third) §30.41).

5       It is well-recognized that "[v]oluntary out of court settlement of disputes is 'highly

6  favored in the law' and approval of class action settlements will be generally left to the

7  sound discretion of the trial judge." *Wellman v. Dickinson,* 497 F.Supp. 824, 830

8  (S.D.N.Y. 1980) (citation omitted), aff'd, 682 F.2d 355 (2d cir. 1982).

9       A court should generally presume fairness at the preliminary stage of approval so

10  long as the settlement is recommended by experienced class counsel after arm's-length

11  bargaining.  *In re Jiffy Lube Securities Litigation,* Fed. Sec.L.Rep. (CCH) ¶ 94,859

12  (D.Md. 1990); *Wellman,* 497 F.Supp. 824; *Armstrong v. Board of School Directors,* 471

13  F.Supp. 800 (E.D. Wis. 1979), *aff'd,* 616 F.2d 305, 325 (7th Cir. 1980); *Cotton v. Hinton,*

14  559 F.2d 1326 (5th Cir. 1977).  In addition, the Settlement's adequacy must be judged as

15  "'a yielding to absolutes and an abandoning of highest hopes . . . .' Naturally, the

16  agreement reached normally embodies a compromise; in exchange for the saving of cost

17  and elimination of risk, the parties each give up something they might have won had they

18  proceeded with litigation . . ."*Officers for Justice v. Civil Service Com.,* 688 F.2d 624 (9th

19  Cir. 1982).  Because the Court must consider risk factors and the uncertainty of the

20  outcome of the litigation as well as the potential recovery, a proposed class settlement

21  may be fair, just, and reasonable even though it amounts to only a fraction of the potential

22  recovery in a fully litigated case.  (*See Linney v. Cellular Alaska P'ship,* 151 F.3d 1234,

23  1242 (risk of going to trial would have been significant); *Torrisi v. Tucson Elec. Power*

24  *Co.,* 8 F.3d 1370, 1376 (9th Cir. 1993) (court found one factor - the financial condition of

25  the defendant - predominated to make clear the district court acted within its discretion).

26  Therefore, considering the potential recovery, the probability of lengthy litigation in the

27  absence of settlement, and the risks that the Class would not have been certified or been

28

**MOTION FOR PRELIMINARY APPROVAL**
**OF SETTLEMENT AGREEMENT**

1   able to succeed at trial and that a jury could award lower damages, the amount of the

2   Settlement is well within the range of reasonableness.

3          This Agreement is the product of arms-length, non-collusive negotiations attended

4   by experienced class counsel. *See* Declaration of Randy Renick at ¶¶ 21-23. Counsel's

5   judgment that the Settlements are fair and reasonable is entitled to great weight. *Officers*

6   *for Justice,* 688 F.2d at 625; *Rutter & Wilbanks Corp. v. Shell Oil Co.,* 314 F.3d 1180,

7   1188 (10th Cir. 2002); *Wilkerson v. Martin Marietta Corp.,* 171 F.R.D. 273, 288-89

8   (D.Colo. 1997). Further, the settlement was reached at a time when there is significant

9   uncertainty about the standard for liability as to meal breaks. Plaintiffs contend that

10  Defendants must ensure that their employees take all required meal breaks. Defendants

11  contend that they must only provide employees with the opportunity to take their meal

12  breaks. This issue is currently pending before the California Supreme Court in *Brinker*

13  *Restaurant Corp. v. Superior Court,* 85 Cal. Rptr. 3d 688 (Oct. 22, 2008), granting

14  petition for review.

15         Indeed, Defendants deny liability for any of the claims asserted by Plaintiffs. The

16  outcome of the litigation, both as to class certification and the merits, was far from

17  certain. In this regard, Defendants contend that the two Groups and each location within

18  a group operate independently of one another and have different relevant policies.

19  Defendants further contend that the ways in which these policies were and are

20  implemented and enforced vary greatly between the lines of business, from component to

21  component, and even within a single location, which often has several components.

22  Defendants contend that many locations, or portions of locations, have had their own

23  meal break policy in place and many also have had collective bargaining agreements with

24  meal break requirements. Thus, the considerable risk that Defendants could defeat

25  certification or that they could prevail on their defenses and defeat any and all recovery to

26  the class warranted a compromise of the class claims.

27

28

12

1    **2.    ADDITIONAL COMPENSATION FOR NAMED PLAINTIFFS**

2         The proposed additional compensation, also known as incentive or service awards,

3    for the current named Plaintiffs is consistent with a fair, just and adequate settlement.

4    "'Courts routinely approve incentive awards to compensate named Plaintiffs for the

5    services they provided and the risks they incurred during the course of the class action

6    litigation.'" *Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136, 145 (E.D.Pa. 2000) (quoting

7    *In re S. Ohio Corr. Facility*, 175 F.R.D. 270, 272 (S.D.Ohio 1997)); *accord, Smith v.*

8    *Tower Loan of Mississippi, Inc.*, 216 F.R.D. 338, 368 (D.Miss. 2003)("Courts commonly

9    permit payments to class representatives above those received in settlement by class

10   members generally"); *see also* Eisenberg & Miller, *Incentive Awards to Class Action*

11   *Plaintiffs*: *An Empirical Study*, 53 UCLA L.Rev. 1303, 1307 (2006)(finding that courts

12   granted incentive awards in 28% of the cases sampled).

13        The size of the incentive awards – $7,500 to the named Plaintiffs – is consistent

14   with the range of incentive awards approved by other federal judges in class action cases.

15   For example, in employment discrimination and employment class actions, which are the

16   most representative samples due to the threat to the named Plaintiffs of economic loss

17   from retaliation, law professors Eisenberg and Miller found that the average incentive

18   awards in those samples were about $12,000 and $70,000 respectively.   *See* Eisenberg &

19   Miller, *Incentive Awards*, 55 UCLA L.Rev. at 1353.  Plaintiffs have found numerous

20   cases where courts have approved incentive awards similar to, or far larger than, those

21   proposed here. *See, e.g., Bradburn Parent Teacher Store, Inc. v. 3M*, 513 F. Supp.2d

22   322 (E.D. Pa. 2007)(Incentive award of $75,000 to one named plaintiff); *Bynum v.*

23   *District of Columbia*, 412 F. Supp. 2d 73 (D. D.C. 2006)(incentive awards of $200,000

24   divided among the six named plaintiffs); *RMED Intern., Inc. v. Sloan's Supermarkets,*

25   *Inc.*, 2003 WL 21136726 (S.D.N.Y. 2003)(incentive award of $25,000 to one named

26   plaintiff); *Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685 (N.D. Ga. 2001)(incentive

27   award of $300,000 to each of four named plaintiffs); *Van Vraken v. Atl. Richfield Co.*,

28

13

901 F. Supp. 294, 299 (N.D. Cal. 1995)(incentive award of $50,000 to one named plaintiff); *Enterprise Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240, 251 (S.D. Ohio 1991)(incentive award of $50,000 to each of six named plaintiffs).

**3.    THE PROPOSED NOTICE TO CLASS MEMBERS IS ADEQUATE**

Class members are entitled to the "best notice practicable under the circumstances" of any proposed settlement before it is finally approved by the Court. Fed. R. Civ. P. 23(c)(2)(b). The notice must state in plain, easily understood language:

- the nature of the action;
- the definition of the class certified;
- the class claims, issues, or defenses;
- that a class member may enter an appearance through counsel if the member so desires;
- that the court will exclude from the class any member who requests exclusion, stating when and how members may elect to be excluded; and
- the binding effect of a class judgment on class members under Rule 23(c)(3). *Id.*

The parties have agreed that the Notice in the form attached as Exhibit "1" and Claim Form attached as Exhibit "2" to the Proposed Order will be sent to each Class Member via First Class Mail.

The content of the Notice complies with the requirements of Rule 23(c)(2)(B). The Notice clearly and concisely explains the nature of the action and the terms of the Settlement. It provides a clear description of who is a member of the class and the binding effects of class membership. It explains how to exclude oneself from the class how to object to the Settlement, the amount of attorney's fees sought, how to obtain copies of papers filed in the case and how to contact Class counsel.

Defendants have agreed to provide each class members' last known address to the Administrator. Prior to mailing the Notice and Claim Form ("Notice Packet") the Administrator will update the address with the United States Post Office Change of Address database. In addition, the Administrator will conduct a skip-trace for all returned

14

1   packets and for all class members who have not returned their claim form after 30 days.

2   The content of the Notices and the proposed plan of allocation fulfill the

3   requirements of Rule 23 and due process. Accordingly, the Court should preliminarily

4   approve both.

5   **4.    CONDITIONAL CLASS CERTIFICATION IS PROPER.**

6           a.    Wage and Hour Claims Are Appropriate for Certification

7           The proposed class satisfies the criteria for certification of a settlement class under

8   federal law (*Fed R Civ Proc 23*):  (1) the individuals in the Settlement Class are so

9   numerous that joinder would be impractical; (2) there is a commonality of interest

10  between the plaintiffs and the members of the Settlement Class; (3) there are questions of

11  law and fact that are common to the Settlement Class, and those common questions

12  predominate over individual questions; (4) plaintiffs' claims are typical of the claims of

13  the absent Settlement Class Members; and (5) plaintiffs and their counsel will fairly and

14  adequately represent the interests of the absent Settlement Class Members. *See Hanlon v.*

15  *Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998) (settlement class certification

16  decision applying *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 117 S. Ct. 2231 (1997),

17  in context of a nationwide products-liability class action).

18

19          Moreover, the California Supreme Court has consistently held that class actions

20  are a proper and efficient means of enforcing the California Labor Code.  In *Gentry v.*

21  *Superior Court,* 42 Cal.4th 443, 457 (2007) , the California Supreme Court, in upholding

22  class arbitration of wage and hour cases, announced the strong public policy in favor of

23  class certification of such claims: 1) violation of these laws usually involves lower

24  income employees and modest individual awards, where the potential recovery would be

25  too small to warrant individual litigation (*id.* at pp. 458–459); 2) current employees suing

26  their employers run a great risk of retaliation, making class certification a necessary

27  mechanism to lessen the fear of retaliation (*id.* at p. 460); and 3) employees may be

28

1  unaware of the violation of their rights and their right to sue. *Id.* at p. 461. Given these
2  considerations, the Supreme Court concluded that "'class actions may be needed to assure
3  the effective enforcement of statutory policies even though some claims are large enough
4  to provide an incentive for individual action. While employees may succeed under
5  favorable circumstances in recovering unpaid overtime through a lawsuit or a wage claim
6  filed with the Labor Commissioner, a class action may still be justified if these
7  alternatives offer no more than the prospect of "random and fragmentary enforcement" of
8  the employer's legal obligation to pay overtime.' [Citation.]" (*Id.* at p. 462.) The class
9  action not only benefits the individual employee but also "serves the public interest in the
10 enforcement of legal rights." (*Id.*) "So high is the importance of these rights that courts
11 may invalidate contractual provisions that infringe upon them." *Crab Addison, Inc. v.*
12 *Superior Court,* 169 Cal. App. 4th 958 (2008), *see also Franco v. Athens Disposal Co.,*
13 *Inc.,* 171 Cal.App.4th 1277 (2009).

14     Federal courts have repeatedly granted certification of the same wage and hour
15 claims at issue here. *Ross v. US Bank Nat'l Ass'n*, 2009 U.S. Dist. LEXIS 116875 (N.D.
16 Cal. 2009); *Cruz v. Dollar Tree Stores, Inc.*, 2009 U.S. Dist. LEXIS 46855 (N.D. Cal.
17 2009); *Amalgamated Transit Union Local 1309 v. Laidlaw Transit Servs.*, 2009 U.S. Dist.
18 LEXIS 7171 (S.D. Cal. 2009); *Perez v. Safety-Kleen Sys.*, 253 F.R.D. 508 (N.D. Cal.
19 2008); *Otsuka v. Polo Ralph Lauren Corp.*, 251 F.R.D. 439 (N.D. Cal. 2008); *Wiegele v.*
20 *FedEx Ground Package Sys.*, 2008 U.S. Dist. LEXIS 10246 (S.D. Cal. 2008);
21 *Heffelfinger v. Elec. Data Sys. Corp.*, 2008 U.S. Dist. LEXIS 5296 (C.D. Cal. 2008)
22 *Krzesniak v. Cendant Corp.,* 2007 U.S. Dist. LEXIS 47518 (N.D. Cal. 2007); *Chun-Hoon*
23 *v. McKee Foods Corp.*, 2006 U.S. Dist. LEXIS 82029 (N.D. Cal. 2006); *Tierno v. Rite*
24 *Aid Corp.*, 2006 U.S. Dist. LEXIS 71794 (N.D. Cal. 2006); *Wang v. Chinese Daily News,*
25 *Inc.*, 231 F.R.D. 602 (C.D. Cal. 2005). However, Plaintiffs have taken into account the
26 uncertainty and risk of further litigation, including the question of whether a class action
27 would be certified if Defendants opposed certification. In this regard, Defendants'
28

**MOTION FOR PRELIMINARY APPROVAL
OF SETTLEMENT AGREEMENT**

mediation brief cited several cases where certification was denied in a non-settlement context.  See *Kenny v. Supercuts, Inc.*, 2008 WL 2265194 (N.D. Cal. June 2, 2008); *Blackwell v. SkyWest Airlines, Inc.*, 245 F.R.D. 453, 467 (S.D. Cal. 2007); *Brown v. Federal Express Corp.*, 2008 WL 906517 (C.D. Cal. 2008); *Forrand v. Fed. Express Corp.*, 2009 U.S. Dist. LEXIS 22912, at \*8-\*9 (C.D. Cal. Feb. 18, 2009); *Goldsby v. Adecco, Inc.*, 2009 U.S. Dist. LEXIS 10799, at \*9-\*15 (N.D. Cal. Feb. 4, 2009). Defendants disagree that certification would be warranted on a fully-litigated record, but do not oppose certification of a class solely for settlement purposes.[3]

        b.     The Number of Class Members is Numerous

The *numerosity* requirement is met if the class is so large that joinder of all members would be impracticable.  *Gay v. Waiters' & Dairy Lunchmen's Union*, 489 F. Supp. 282 (N.D. Cal. 1980), *aff'd*, 694 F.2d 531 (9th Cir. 1982) (allowing a class action for alleged discrimination in hiring practices under various civil rights statutes, including Title VII, where the plaintiffs identified 184 potential class members).  The Ninth Circuit has stated that the numerosity requirement could be satisfied by a class with 174 members, in part because of the "small size of each class member's claim."  *Jordan v. County of Los Angeles*, 669 F.2d 1311, 1319 (9th Cir.), *vacated on other grounds*, 459 U.S. 810, 103 S. Ct. 35 (1982).  Here, the proposed class has approximately 20,000 members who have worked for the Defendants in California since July 29, 2005.  Since their joinder is plainly impracticable, the numerosity requirement is satisfied for purposes of a settlement class.

Moreover, the proposed class includes current employees of the Defendant, and courts have noted that in such circumstances, "concern for possible employer reprisal action exists and renders the alternative of individual joinder less than practicable."

---

[3] In the event that the Settlement is not finally approved, Defendants reserve all rights to contest Plaintiffs' request for class certification of their claims.

17

1  *Adames v. Mitsubishi Bank, Ltd.*, 133 F.R.D. 82, 89 (E.D.N.Y. 1989). Finally, the

2  proposed class includes former employees, whose whereabouts may be difficult to

3  ascertain, a fact which "contribute[s] to the impracticability of proceeding by joinder."

4  *Tennie v. City of New York Dep't of Soc. Servs.*, No. 83 Civ. 0884 (MEL) 1987 U.S. Dist.

5  LEXIS 574, at *12 (S.D.N.Y. Jan. 30, 1987).

6        Numerosity also requires that the identities of class members may be ascertained.

7  *See Daar v. Yellow Cab Co.*, 67 Cal.2d 695, 706 (1967) (holding certification of class of

8  purportedly overcharged taxi cab passengers sufficiently ascertainable). Generally, a

9  class is ascertainable when the following requirements are satisfied: (a) potential class

10  members are clearly identifiable and the size reasonably controlled; and (b) the members

11  can be located and notified of the action through a reasonable expenditure of time and

12  money. *Reyes v. Bd. of Supervisors*, 196 Cal. App. 3d 1263, 1274-75 (1987). When the

13  members of the designated class may be readily identified or their claims substantiated by

14  reference to the defendant's existing records, and when performance of the two functions

15  will not involve unreasonable time or expense, the class is ascertainable. *Hypolite v.*

16  *Carleson,* 52 Cal.App.3d 566, 578-79 (1975). Moreover, Plaintiffs here have tailored the

17  proposed Settlement Class to insure that they are readily ascertainable. The proposed

18  Settlement Class includes only those persons who worked as an hourly, non-exempt

19  employee for the Defendants in California since July 29, 2005. The identities of class

20  members are ascertainable because they are set forth in employment records in the

21  possession of the Defendants. Under the terms of the proposed settlement, class members

22  who receive notice will be identified by Defendants during a thorough review of their

23  employment records and other information available to the company, which will confirm

24  that the list of class members is consistent with those records.

25            c.      Common Issues of Law and Fact Predominate

26

27        The *commonality* requirement is met if there are questions of law and fact common

28

to the class. *Hanlon*, 150 F.3d at 1019. "The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Id*. Here, the proposed class members' claims all stem from the same source – the alleged failure of the Defendant to provide rest and meal breaks as required by law and to pay its hourly employees for all hours worked. Under these circumstances, the commonality requirement is satisfied. The common issues include:

1.   Did Defendants fail to provide meal and rest periods in violation of Labor Code sections 512 and 226.7?

2.   Did Defendants refuse to pay an additional hour of compensation for every shift that a mandated meal or rest period was not provided, in violation of Labor Code section 226.7;

3.   Did Defendants fail to pay for work performed during missed meal periods;

4.   Did Defendants fail to pay earned overtime compensation;

5.   Did Defendants fail to pay all wages and compensation earned within the time limits required under Labor Code section 204;

6.   Did Defendants fail to pay all wages and compensation owed within seventy-two hours of termination, in violation of Labor Code sections 201 and 202;

7.   Did Defendants fail to reimburse employee expenses in violation of Labor Code 2802 and 221; and

8.   Did Defendants fail to maintain records of, and furnish to members of the Plaintiff Class, accurate, itemized wage statements, in violation of Labor Code section 226.

California and federal courts have held that in wage and hour class cases such as the present, common issues predominate. *Sav-On Drug Stores, Inc. v. Superior Court*, 34 Cal. 4th 319, 334-335 (2004); *see also Collins v. Rocha*, 7 Cal. 3d 232 (1972) approving class certification claims for fraudulent representation to pay agricultural workers and wrongful discharge; *Bell v. Farmers Ins. Exchange,* 115. Cal.App.4th 715 (2004) approving class certification of class of hundreds of claims adjusters because common question of whether they were exempt, as a group, predominated over individual issues;

19

1  *Kamar v. Radio Shack Corp.*, 254 F.R.D. 387, 405 (C.D. Cal. 2008) (class certification

2  proper "even if individualized inquiries into class members' actual wages were necessary,

3  they would be relatively manageable because RadioShack's payroll records contains that

4  data"); *Romero v. Producers Dairy Foods, Inc.*, 235 F.R.D. 474, 490 (E.D. Cal. 2006).

5              d.      The Claims are Typical

6          The *typicality* requirement is met if the claims of the named representatives are

7  typical of the claims of the class; "they need not be substantially identical." *Id.* at 1020.

8  The claims of the named representatives in this case are typical of the claims of the whole

9  class because they arise from the same factual basis and are based on the same legal

10  theory as those applicable to the class members. *See Wehner v. Syntex Corp.* (N.D. Cal.

11  1987) 117 F.R.D. 641, 644.  The representatives claim that Defendants failed to provide

12  rest and meal breaks in violation of state law and to pay its hourly employees for all hours

13  worked.  The existence of numerous common issues of fact and law and the well-defined

14  community of interests among the class members here makes the representative plaintiffs

15  typical of the plaintiff class for settlement purposes. *See, e.g., Classen v. Weller,* 145

16  Cal. App. 3d 27, 46 (1983); *In re Sugar Industry Antitrust Litigation*, 73 F.R.D. 322, 336

17  (E.D. Pa. 1976).

18              e.      The Class is Adequately Represented

19          The class members are *adequately represented* if the named plaintiffs and their

20  counsel (1) do not have any conflicts of interest with other class members, and (2) will

21  prosecute the case vigorously on behalf of the class. *See Local Rule 15.18(e*); *Hanlon*,

22  150 F.3d at 1020.  Those standards are met here.  Under the proposed settlement, the 7

23  class representatives who brought this lawsuit will seek a payment of Seven Thousand

24  and Five Hundred Dollars ($7,500) each for their time and effort.  Beyond those specific

25  payments, all of the class members will receive a portion of the balance of the settlement

26  fund based on the number of weeks worked during the class period.   Thus, no "settlement

27  allocation" questions are raised. *Hanlon*, 150 F.3d at 1020.

28

                                          20

1    Likewise, Plaintiffs and their Counsel have prosecuted the action vigorously on
2  behalf of the class, moving this case promptly to a class-wide resolution. Plaintiffs'
3  Counsel has prosecuted dozens of class-action lawsuits and are qualified to conduct
4  prosecution of a class action such as this. (Renick Decl. ¶¶ 21-23)  *See Richmond v. Dart*
5  *Indus. Inc.*, 29 Cal.3d 462, 470 (1981).  Thus, Plaintiffs' Counsel's prosecution of this
6  case has been sufficiently vigorous to meet the requirement of Rule 23(a)(4).  *See id.*

7    Under the foregoing circumstances, the requirements of Rule 23 are met with
8  respect to the proposed class, which should be certified for settlement purposes only.

9        **5.    A CLASS ACTION IS SUPERIOR TO OTHER AVAILABLE METHODS FOR THE**
10             **FAIR AND EFFICIENT ADJUDICATION OF THIS CASE**

11    Rule 23(b)(3) provides that certification of a case is appropriate if class treatment
12  "is superior to other available methods for the fair and efficient adjudication of the
13  controversy." It sets forth four factors to be considered:  (1) the interest of members of the
14  class in individually controlling the prosecution of separate actions; (2) the extent and
15  nature of any litigation concerning the controversy already commenced by members of
16  the class; (3) the desirability of concentrating the litigation of the claims in a particular
17  forum; and (4) the difficulties likely to be encountered in the management of a class
18  action.  Fed. R.Civ.P. 23(b)(3).  Prosecuting this action as a class action is clearly
19  superior to other methods of adjudicating this matter.

20    The alternative to a class action – many duplicative individual actions – would be
21  inefficient and unfair.  "Numerous individual actions would be expensive and  time-
22  consuming and would create the danger of conflicting decisions as to persons similarly
23  situated." *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978).
24  Further, it would deprive many class members of any practical means of redress.  Most
25  class members would be effectively foreclosed from pursuing their claims absent class
26  certification.  *Hanlon*, 150 F.3d at 1023 ("many claims [that] could not be successfully
27  asserted individually ... would not only unnecessarily burden the judiciary, but would
28

**MOTION FOR PRELIMINARY APPROVAL**
**OF SETTLEMENT AGREEMENT**

1  prove uneconomic for potential plaintiffs"); *Northwestern Fruit Co. v. A. Levy & J.*
2  *Zentner Co.*, 116 F.R.D. 384, 389 (E.D. Cal. 1986) ("Multiple lawsuits . . . would be
3  costly and inefficient, and the exclusion of every class member that cannot afford separate
4  representation would be neither 'fair' nor an 'adjudication' of their claims.").
5      The proposed class satisfies the requirements of Rule 23(b)(3).
6      **6.    THE COURT SHOULD APPOINT THE PLAINTIFFS' CURRENT COUNSEL AS**
7      **COUNSEL FOR THE CLASS**
8      Fed. R. Civ. P. 23(c)(1)(B) states that "[a]n order certifying a class action … must
9  appoint class counsel under Rule 23(g)." Rule 23(g)(1)(C) states that "[i]n appointing
10  class counsel, the court (i) must consider: [1] the work counsel has done in identifying or
11  investigating potential claims in the action, [2] counsel's experience in handling class
12  actions, other complex litigation, and claims of the type asserted in the action,
13  [3] counsel's knowledge of the applicable law, [4] the resources counsel will commit to
14  representing the class."
15      Hadsell Stormer Keeny Richardson & Renick, LLP  seeks to be appointed as
16  Counsel for the Class. Hadsell Stormer Keeny Richardson & Renick, LLP has been
17  previously appointed interim Lead counsel for the Consolidated cases and is willing and
18  able to vigorously prosecute this action and to devote all necessary resources to obtain the
19  best possible result. The work done to date supports the conclusion that it should be
20  appointed as Class Counsel for purposes of the Settlements. *See, e.g., Harrington v. City*
21  *of Albuquerque*, 222 F.R.D. 505, 520 (D.N.M. 2004). The firm meets the criteria of
22  Rule 23(g)(1)(C)(i). *Cf. Farley v. Baird, Patrick & Co., Inc.* 1992 WL 321632*5
23  (S.D.N.Y. 1992) ("[c]lass counsel's competency is presumed absent specific proof to the
24  contrary by defendants").
25
26          **IV.  CONCLUSION**
27      For the reasons stated herein, Plaintiffs respectfully request that this Court
28

22

1     preliminarily approve the proposed settlement.

2

3

4     DATED: April 5, 2010            Respectfully submitted,

5                                    HADSELL STORMER KEENY

6                                        RICHARDSON & RENICK, LLP

7

8                                By _____/s/_____

9                                     Randy Renick
                                       Attorneys for Plaintiffs

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**MOTION FOR PRELIMINARY APPROVAL
OF SETTLEMENT AGREEMENT**

1

2   G:\DOCS\ARAMARK\DOCS\Preliminary Approval\MPA w d edits.wpd

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**MOTION FOR PRELIMINARY APPROVAL**
**OF SETTLEMENT AGREEMENT**