1  Dan Stormer, Esq. S.B. 101967
2  Randy Renick, Esq. S.B. 179652
   HADSELL STORMER KEENY RICHARDSON & RENICK, LLP
3  128 N. Fair Oaks Avenue
4  Pasadena, California 91103
5  Telephone:  (626) 585-9600
   Facsimile:  (626) 577-7079
6  E-mail: rrr@hskrr.com
7  Attorneys for Plaintiffs and All Those Similarly Situated
   [Counsel for Plaintiffs Continued on Signature Page]
8

9          **UNITED STATES DISTRICT COURT**
10         **CENTRAL DISTRICT OF CALIFORNIA**

11  GENARO ZENDEJAS MORALES,          ) MASTER FILE NO. 2:09-cv-05565
    RICKY SILVA and CHRISTIAN         ) JHN MLGx
12  SANCHEZ, on behalf of themselves and all )
13  others similarly situated,        )
             Plaintiffs,              )
14                                    ) **DECLARATION OF RANDY**
    v.                                ) **RENICK IN SUPPORT OF**
15                                    ) **MOTION FOR FINAL**
    ARAMARK CORPORATION, a Delaware   ) **APPROVAL OF SETTLEMENT**
16  Corporation formerly known as     ) **AGREEMENT; EXHIBITS**
    ARAMARK SERVICES, INC.;           )
17  ARAMARK SPORTS, INC., ARAMARK     ) **Date: September 27, 2010**
18  SPORTS, LLC and DOES 1-200, inclusive, ) **Time: 2:00**
             Defendants.              ) **Courtroom: 790 Roybal**
19                                    )
20  _____ )
    KRISTINA LE-NGUYEN, an individual, )
21  and CAMILLE LEWIS, an individual, on )
    behalf of themselves, and an behalf of all )
22  others similarly situated,        )
23           Plaintiffs,              )
    v.                                )
24  ARAMARK CORPORATION, a Delaware   )
25  Corporation, and DOES 1 through 100, )
    inclusive,                        )
26           Defendants              )
27  _____

28

                             1
_____
**DECLARATION OF RANDY RENICK IN SUPPORT OF MOTION FOR FINAL
APPROVAL OF SETTLEMENT AGREEMENT; EXHIBITS**

## DECLARATION OF RANDY RENICK

I, Randy Renick, hereby declare and say:

1.     I am a partner at the law firm of Hadsell Stormer Keeny Richardson & Renick. I am an attorney licensed to practice law in California, and counsel of record for plaintiff in this action. I have reviewed the documents identified herein and am fully familiar with the facts set forth therein. Based on my own personal knowledge and on my familiarity with the pleadings and files in this action, I can state that the following information is true and accurate.

### BACKGROUND INFORMATION

2.     Over the past 12 months, a number of wage and hour class actions have been brought against Aramark Sports LLC, Aramark Sports Inc., and Aramark Services, Inc., Aramark Corporation and Aramark SM Management Services, Inc. (collectively "Aramark" or "Defendants"). The first action alleging the claims at issue was filed by Hadsell Stormer Keeny Richardson & Renick, LLP ("HSKRR") on July 29, 2009, as *Morales, et al. v. Aramark Corporation, et al.,* Case No. CV09-5565 CBM (MLGx) ("Morales"). Subsequently the matter of *Le-Nguyen, et al. v. Aramark, et al.,* Case No. SACV09-1037 (Anx) was filed in Orange County Superior Court on August 5, 2009 and then removed to District Court September 9, 2009.

3.     This Court consolidated the *Le-Nguyen* action with the *Morales* action on December 2, 2009, and appointed Hadsell Stormer Keeny Richardson & Renick, LLP as Interim Lead Counsel. (Docket No. 35).

4.     Two other cases, *Holtz v. Aramark SM Management Services, Inc.*, Case No. SACV09-840 JVS (JCX)  (filed in Orange County Superior Court on June 18, 2009, removed to District Court on July 20, 2009) and *Brown v. Aramark Sports, LLC*, Case No. 00180158 (filed in Orange County Superior Court on September 4, 2009) were filed and subsequently dismissed without prejudice. Holtz and Brown were included as Plaintiffs in the First Amended Consolidated

**DECLARATION OF RANDY RENICK IN SUPPORT OF MOTION FOR FINAL APPROVAL OF SETTLEMENT AGREEMENT; EXHIBITS**

Complaint filed January 5, 2010. This proposed settlement brings all of the cases to a close.

5.      Aramark Corporation is a facility services contractor that provides food and beverage services at event centers and businesses throughout the United States and California. Aramark is organized under the laws of the State of Delaware, and its corporate headquarters are located in Philadelphia, Pennsylvania.

6.      Defendants Aramark Sports, Inc. and Aramark Sports, LLC are wholly-owned subsidiaries of the Aramark Corporation. Two different Aramark lines of business: 1) Sports and Entertainment Group; and 2) Business and Industries Group oversee the facilities at issue in this case.

7.      Aramark Sports LLC (formerly Aramark Sports Inc.) runs the "Sports and Entertainment Group" providing food, beverage facilities and retail services such as catering, restaurant operations, concessions, in-seat dining, hawking, and merchandise concession stand sales at sports and entertainment venues in California. Currently, Aramark Sports and Entertainment Group operates those services at approximately 30 locations in California. In Southern California, the locations include Angel Stadium, the Honda Center, Los Angeles Convention Center, Anaheim Convention Center, the Great Western Forum, the Greek Theatre, the Galen Center, Verizon Wireless Amphitheater and Petco Park, among others. In Northern California, they include: HP Pavilion, Garden City Casino, and Santa Clara Convention Center, among others.

8.      Angel Stadium is the California location with the single highest number of class members. Throughout the course of any given year, between 750-1200 seasonal workers are employed at Angel Stadium. Those workers' schedules are event-driven, meaning that employees are only called in to work when there is a baseball game, or other event. Some have only worked a single event while others have worked several events over several years.

/ / /

**DECLARATION OF RANDY RENICK IN SUPPORT OF MOTION FOR FINAL APPROVAL OF SETTLEMENT AGREEMENT; EXHIBITS**

9.     Aramark Corporation runs the "Business and Industries Group," which provides food, retail, facility and logistical services that include management and operations of cafeterias, coffee kiosks and sundries shops, as well as limited catering services on the campuses, facilities, or other property of approximately 130 different corporations in California: including AT&T, Metropolitan Transit Authority (MTA), Northrup Grumman, Anheuser-Busch Corporation, Boeing Corporation, Neutrogena, KLA-Tencor, AMD and Nvidia. These locations typically employ a dozen or so employees on a full time basis.

10.     Class members serve as servers, bartenders, concession stand workers, concessions stand leads, warehouse workers, cooks, utility workers, kitchen workers, cashiers, catering workers, cafeteria workers, dishwashers, hawkers, and other roles.  Given the part time nature of much of the work, the turn-over of Aramark employees is extremely high.  The number of class members is approximately 22,000 and the number of full time equivalent employees ("FTE") is approximately 3,300.

11.     Genaro Zendejas Morales, Ricky Silva, Christian Sanchez, Kristina Le-Nguyen, Camille Lewis, Irby Brown and Michelle Holtz are current or former employees of the Aramark Defendants and were employed as hourly employees during the class period by Aramark in California.  Each of the Class Representatives was denied some or all of the meal and rest breaks to which they were entitled under California law, or were denied the opportunity to take their breaks until the end of their eight hour shift.  Moreover, none of the Class Representatives was paid one hour of premium pay on those occasions they were denied break as provided by law.

12.     At least two of the Named Representatives, Camille Lewis and Michelle Holtz were not reimbursed for expenses they were required to incur in the performance of their jobs, including cell phones and shoes.  In addition to being denied breaks, and failing to pay for all hours worked, Defendants failed to provide

4

1  each of the Representatives with a wage statement that accurately reflects the hours
2  worked or the proper rate of pay.  For those employees who were terminated,
3  including Morales, they were not paid all of the wages due them at the time of
4  termination and as a result are entitled to waiting time penalties pursuant to Labor
5  Code § 203.

6  ## SETTLEMENT HISTORY AND EXCHANGE OF INFORMATION

7          13.     Prior to the filing of the lawsuit, Lead Counsel spent six months
8  investigating Plaintiffs' claims.  During that time, Hadsell Stormer Keeny
9  Richardson & Renick, LLP interviewed dozens of putative class members across
10  the state, gathering information and documents related to the claims at issue.  At
11  the conclusion of that time, Plaintiffs filed suit setting forth those claims which had
12  been substantiated through the pre-filing investigation.

13          14.     After filing, counsel for Plaintiffs and Defendants discussed the status
14  of the case and the prospects of conducting a mediation to determine if resolution
15  was possible at the early stages of the litigation.  Plaintiffs insisted that substantial
16  discovery was required so that both sides would be fully informed of the Plaintiffs'
17  likelihood of prevailing at trial and the range of outcomes that could be expected
18  before they would commit to mediation.

19          15.     Through substantial informal discovery occurring over a period of
20  many months, Defendants provided Plaintiffs' counsel with thousands of
21  documents, voluminous data, analysis, sample testimony, policies, collective
22  bargaining agreements, samples and spreadsheets reflecting employees' time
23  worked, and supporting records, including time records, meal period logs and other
24  evidence of meal periods for sampling periods during the class period for various
25  of Defendants' components/locations in California, and compensation information
26  and data for the vast majority of the proposed class.  This data included two
27  spreadsheets, one for certain Sports and Entertainment sites and one for the
28  Business and Industries Group sites, that were prepared especially for this

**DECLARATION OF RANDY RENICK IN SUPPORT OF MOTION FOR FINAL
APPROVAL OF SETTLEMENT AGREEMENT; EXHIBITS**

litigation, as well as the underlying documents supporting the data in the spreadsheets.  These spreadsheets include sampling data for certain time periods throughout the statute of limitations period. The Sports and Entertainment spreadsheet reflects a sampling of time entry and meal period records from all of the following Sports and Entertainment sites: Angel Stadium, Honda Center, Los Angeles Convention Center, Anaheim Convention Center, Garden City Casino, the Forum, the Greek Theater, HP Pavilion, and the Santa Clara Convention Center. The as 17 Business and Industries Group spreadsheet and data included samplings from all of the following sites: Anheuser Busch, Advanced Micro Devices, AT&T-CBA, AT&T-Pasadena, AT&T-San Ramon, Boeing Seal Beach, Boeing Huntington Beach, Boeing Long Beach, KLA-Tencor/KLA, KPMG, Metropolitan Transit Authority, Neutrogena, Northrop Grumman El Segundo (aka "Candle Corporation, Northrup Grumman Redondo Beach, Nvidia, Symantec Cupertino and Symantec Mountain View.

16.    In addition to the payroll and timecard data, Aramark produced and Plaintiffs reviewed over 7,000 pages of meal period logs, meal period schedules and Aramark's policies and collective bargaining agreements.  Plaintiffs also interviewed and obtained written declarations from dozens of class members.

17.    Plaintiffs retained Todd Stefan of Setec Investigations to organize, maintain and evaluate the timecard and payroll data.  For the more than 68,000 shifts for which he was provided data, Mr. Stefan determined on a location specific basis: 1) the number of shifts in the pay period; 2) number of those shifts that lasted more than 5 hours; 3) the number of those shifts where no meal period was recorded; 4) the number of those shifts where the meal period recorded was less than 30 minutes; 5) the number of those shifts where the meal break was taken before or at the beginning of the shift; and 6) the number of those shifts where the meal period was taken just prior to or at the end of the shift.  Mr. Stefan was then

**DECLARATION OF RANDY RENICK IN SUPPORT OF MOTION FOR FINAL APPROVAL OF SETTLEMENT AGREEMENT; EXHIBITS**

18.     Based on all of the evidence obtained and the worked performed by counsel and their experts, Plaintiffs developed a sophisticated damage analysis modeling the damages Plaintiffs were likely to recover at trial applying a number of different assumptions and scenarios.

19.     On January 6, 2010, the parties attended a mediation before Mark Rudy of Rudy, Exelrod, Zieff & Lowe, LLP, a highly regarded private mediator who is intensely familiar with wage-and-hour class action lawsuits.  At the mediation, the parties exchanged detailed information concerning the claims, defenses and alleged damages at issue.  Based upon the investigation and discovery completed by Plaintiffs, the parties were able to reach a settlement at the mediation.  The settlement was ultimately reduced to writing and executed by all of the parties.  A true and correct copy of the Settlement Agreement is attached hereto as Exhibit "A."

20.     Based upon the investigation we performed, including the analysis of the timecard and payroll data, and taking into account the risk that Plaintiffs' claims might not be certified, I valued Plaintiffs' claims for 1) meal and rest break violations; 2) unpaid wages; 3) waiting time penalties; 4) and unreimbursed expenses at $6.95 Million.  The settlement amount of $3,900,000 represents a recovery of 56% of the value of the case were it taken all the way through trial and appeals.  The Agreement provides for a payment of $39,000 to the State of California Labor Workforce and Development Agency pursuant to California Private Attorney General Act, Labor Code § 2699 et seq.

### EXPERIENCE OF COUNSEL

21.     Plaintiffs are represented by in this action by Hadsell Stormer Keeny Richardson & Renick, LLP.  Hadsell Stormer Keeny Richardson & Renick, LLP has substantial experience litigating class action cases having served as class

**DECLARATION OF RANDY RENICK IN SUPPORT OF MOTION FOR FINAL APPROVAL OF SETTLEMENT AGREEMENT; EXHIBITS**

counsel in more than 75 cases, including but not limited to the following: Diaz v. ABM Industries, Inc., BC 362932, Morales v. Aramark, 2:09-cv-05565-FMC-MLGx, McLaughlin v. County of Riverside, 500 U.S. 44 (1991); Pierce v. County of Orange, 2008 U.S. App. LEXIS 10454 (9th cir. 2008), Donaldson v. City of Long Beach, BC251505; Cundiff, et al. v. Verizon, et al., BC 237806; Grafman v. Washington Mutual, Case No. Consolidated Case Nos. BC 218 991 and BC 240935; Amaro v. Ritz Carlton, BC 376739; Alvarez v. Fox Transport, et al., BC 284345; Sandoval v. Interim Services, et al, Case No. BC 236 636; Hernandez v. Tyco International (U.S.), Inc., BC 315749; Wang v. Chinese Daily News, CV 04-1498 CBM (JWJx); Pinney v. Great Western Bank, United States District Court, CV-95-2110 IH; Rogers v. Weyerhaeuser Corp., United States District Court, CV 05-06076 -NM; Levitan v. TV Fanfare Media Inc., Los Angeles Superior Court Case No. BC 241713 (Judge Kuhl); and Vitamin Antitrust Cases, San Francisco Superior Court, J.C.C.P. No. 4076 (Judge Kramer). A true and correct copy of my curriculum vitae is attached at exhibit "B."

22.    I have been selected as a "Super Lawyer" by Los Angeles Magazine and Law & Politics Magazine each year since 2005. I was also selected as a "Rising Star" by the Los Angeles Magazine and Law & Politics Magazine for 2004. I have been named one of "The Best Lawyers in America" each year since 2007. I am regularly asked to give lectures regarding public interest and class action litigation to lawyers, law students and public interest organizations; including the National Employment Lawyers Association, California Employment Lawyers Association, University of California at Los Angeles School of Law; State Bar of California Labor and Employment Section; Los Angeles County Bar Labor and Employment Section; The Coalition Against Slavery and Trafficking; and the Western Trial Lawyers Association.

23.    Some of the cases I have litigated include: *Wang v. Chinese Daily News*, United States District Court, CV-04-1498 CBM; *Pinney v. Great Western*

**DECLARATION OF RANDY RENICK IN SUPPORT OF MOTION FOR FINAL APPROVAL OF SETTLEMENT AGREEMENT; EXHIBITS**

*Bank,* United States District Court, CV-95-2110 IH; *Doe v. Unocal Corp.*, United States District Court, CV 96-6959 RAP; *Paige v. State of California*, United States District Court, CV 94-0083 CBM, *Rogers v. Weyerhaeuser Corp.*, United States District Court, CV 05-06076 -NM, *Levitan v. TV Fanfare Media Inc.*, Los Angeles Superior Court Case No. BC 241713 (Judge Kuhl), *Vitamin Antitrust Cases*, San Francisco Superior Court, J.C.C.P. No. 4076 (Judge Kramer).

ENHANCEMENT AWARDS

24.    The Settlement Agreement and Notice to the Class provides for an enhancement award of $7,500 to each of the seven class representatives.

25.    Here, each of the class plaintiffs took the risk that future employment, whether it was with the Defendants or other construction company would also be jeopardized.  They took this risk while others choose not to, and took the risk to benefit the other class members.

26.    Class plaintiffs cooperated with plaintiff's counsel in preparing for filing and for mediation.  Overall, class plaintiffs' participation and cooperation was a major reason why the litigation resulted in such a favorable settlement for the class.

27.    The enhancement awards here are also proportionate to the monetary relief provided by the Settlement Agreement as the monetary benefits provided by the Settlement Agreement to the absent members of the Settlement Class will far outweigh the additional compensation sought for the named Plaintiff. The enhancement award, totaling $52,500 is 1.4% of the settlement.

**ATTORNEY'S FEES- HADSELL STORMER KEENY RICHARDSON & RENICK, LLP**

28.    My current hourly rate is $575.  My 2009 rate of $550 was recently approved by Judge Palazuelos in *De La Rosa v. ICC Collision Centers*, BC 389024.  In 2008, United States District Court Judge Consuelo J. Marshall awarded HSKRR, Hadsell & Stormer and the Law Offices of Randy Renick $3.5 million in

9

**DECLARATION OF RANDY RENICK IN SUPPORT OF MOTION FOR FINAL APPROVAL OF SETTLEMENT AGREEMENT; EXHIBITS**

fees for their work in *Wang v. Chinese Daily News*, CV 04-1498.  In October, 2008, the *Wang* Court affirmed my hourly of $550 and applied a multiplier of 1.5 to reflect my skill and experience.  In 2007, my then hourly rate of $500 was approved in a number of cases in Los Angeles, San Francisco and San Diego.  Los Angeles Superior Court Judge Rolf M. Treu approved my hourly rate in *Soto v. Starwood Hotels* (BC 352849) as did Judge Emilie H. Elias in *Hernandez v. Tyco International* (BC315749).  My rate was also approved by San Francisco Superior Court Judge Richard A. Kramer in *Villa v. Crompton* (CGC-04-431278) and *Competition Collision v. Crompton*, CGC-04-431278.  In addition, San Diego Superior Court Judge Ronald S. Prager approved fees based on my hourly rate in *In Re: Natural Gas Cases, JCCP Case Numbers: 4221, 4224, 4226, 4228.*

29.   Virginia Keeny is a 1988 graduate of Stanford Law School.  From 1988-89, she served as Law Clerk to the Honorable William A. Norris, United States Court of Appeals for the Ninth Circuit.  Thereafter, she served as a "Public Interest Fellow" at Litt & Stormer and a Senior Trial Attorney at the EEOC prior to joining Hadsell & Stormer in 1993.  At the EEOC, she was responsible for litigating several class actions against California employers, including one on behalf of female roustabouts against Shell Oil Company and an age discrimination action against a local construction company. Ms. Keeny has numerous employment cases, including <u>Mosleh v. City of El Segundo</u>, a racial and sexual harassment case against the City of El Segundo, which resulted in a settlement of $1.3 million; <u>Cameron v. Los Angeles Fire Department</u>, a sexual discrimination case brought on behalf of a group of female firefighters; <u>Dagdigian v. City of Los Angeles</u>, an age and national origin discrimination case which settled for $495,000; <u>Rhodes v. State of California,</u>, a sexual harassment case brought on behalf of a medical assistant at the Correctional Institute for Men (Chino) against her supervisor and the State for failure to prevent sexual harassment, which resulted in a verdict for the plaintiff and judge awarding Hadsell & Stormer its entire request

10

1   for attorneys' fees.  Over the course of her career with Hadsell & Stormer and with
2   Hadsell Stormer Keeny Richardson & Renick, LLP, she has handled numerous
3   class action or potential class action matters, including suits challenging the City of
4   Long Beach's utility practices, Donaldson v. City of Long Beach, BC251505; a
5   suit challenging NASA's requirement that low-risk employees at JPL submit to an
6   intrusive background investigation and suitability determination, Nelson v. NASA,
7   CV-07-05669 ODW(VBKx), which recently resulted in entry of a preliminary
8   injunction by the Ninth Circuit against NASA; a suit challenging Verizon's
9   fraudulent billing practices with respect to rental phones, Cundiff, et al. v. Verizon,
10  et al., BC 237806, which resulted in a settlement of over $20 million to the class in
11  cash reimbursements and payment of $1 million to twenty charitable organizations
12  located throughout California; Pinney v. Great Western Bank, a federal class action
13  alleging fraud in the sale of mutual funds, which ultimately settled for over $16
14  million.

15      30.   Ms. Keeny has also been lead or co-counsel on numerous wage and
16  hour class actions, including Alvarez v. Fox Transport, et al., BC 284345 on behalf
17  of a class of drivers who had been misclassified as independent contractors;
18  Sandoval v. Interim Services, Inc., Case No. BC 236 636 on behalf of a class of
19  food servers and laundry personnel working in the Los Angeles County jail
20  system; and Hernandez v. Tyco International U.S., Case No. BC315749, which
21  resulted in a settlement of $4.9 million for a class of production workers in several
22  plastic manufacturing plants in Southern California.  Her current hourly rate is
23  $600 per hour.

24      31.   Josh Piovia-Scott is a 2002 graduate of the UCLA School of Law and
25  has practiced in the complex and class action litigation since his admission to the
26  California Bar in the Fall in 2002.  Mr. Piovia-Scott graduated as part of the UCLA
27  School of Law's innovative Program in Public Interest Law and Policy and was a
28  member of the second class of the law school's Concentration in Critical Race

**DECLARATION OF RANDY RENICK IN SUPPORT OF MOTION FOR FINAL
APPROVAL OF SETTLEMENT AGREEMENT; EXHIBITS**

Studies. Mr. Piovia-Scott externed full-time for a semester at the ACLU of Southern California and has worked for both the Legal Aid Foundation of Los Angeles and the Western Center on Law and Poverty. The summer following his second year at UCLA Law, Mr. Piovia-Scott was awarded a prestigous Public Interest Fellowship and interned at the United Nations in Geneva, Switzerland, working on the World Conference Against Racism. Mr. Piovia-Scott sits on the board of directors of the largest grass-roots peace and justice organization in California and is active in his community. Mr. Piovia-Scott was selected as a "Rising Star" by the Los Angeles Magazine and Law & Politics Magazine each year since 2005. His current hourly rate is $425.

32. Ben Stormer obtained his JD degree from the University of West Los Angeles in 2002. Since that time he has been employed as a Law Clerk by the Law Offices of Randy Renick and most recently by my firm. Mr. Stormer has substantial experience managing discovery in complex class action cases. In this matter, Mr. Stormer assisted in the development and management of a database of information regarding each of the members of the class, including their contact information and payroll data. After the database was created, Mr. Stormer along with the paralegals, contacted individual class members to interview them in connection with the litigation. The services provided by Mr. Stormer are of the nature normally performed by an attorney and are then typically charged to a client at an hourly rate of $225.

33. Maria Stroud is a paralegal with my firm. Ms. Stroud has worked as paralegal for over 15 years. She has focused exclusively on managing complex wage and hour class action cases since 2001, when she began with the firm of Bahan & Associates. She performed a number of important tasks in this litigation, including interviewing witnesses, preparing summaries of documents and data, managing large quantities of documents, and overseeing the review of the timecard and payroll data. Her current hourly rate is $225.

**DECLARATION OF RANDY RENICK IN SUPPORT OF MOTION FOR FINAL APPROVAL OF SETTLEMENT AGREEMENT; EXHIBITS**

34.     Mary Cervantez is a paralegal who worked on this matter, interviewing class members and reviewing documents, tasks that are typically performed by attorneys.  This type of paralegal services are typically charged to clients in class action cases such as the present at Ms. Cervantez current hourly rate of $175 per hour.

35.     Denise Ballesteros graduated with high honors from the University of California, Los Angeles with Bachelors of Arts in International Development Studies and Chicano Studies, and minors in Political Science and Latin American Studies.  She began working at Hadsell Stormer Keeny Richardson & Renick, LLP in June 2009.  Her responsibilities on this matter include calculating damages based on payroll and timecard records.  These type of paralegal services are typically charged to clients in class action cases such as the present at Ms. Ballesteros current hourly rate of $150 per hour.

36.     To date attorneys from my office have spent 1,256.55 hours on this case for a lodestar of $506,667.5.  I expect to personally spend another 50 hours on the matter handling the hearing for final approval, claims administration and distribution issues.  When this matter is completed, my firm's total hours spent will be 1306.55 with a lodestar of $535,417.50.

37.     My firm's billing records were compiled by my firm's in-house bookkeeper from time sheets filled out by the individual attorney or paralegal at or about the time the work was performed by recording the amount of time worked, broken down by 1/10 hour periods or were entered by the computer system by the individual timekeeper.  When the data was put on time sheets it was then entered on a weekly basis by my bookkeeper into our computer system and recorded therein.  On a monthly basis, the computer records are printed out, reviewed by the supervising partner for accuracy, and thereafter stored in billing files for each case in our office.  These computer printouts constitute the standard billing records for this case, which records are kept in the normal course of business.

13

**DECLARATION OF RANDY RENICK IN SUPPORT OF MOTION FOR FINAL APPROVAL OF SETTLEMENT AGREEMENT; EXHIBITS**

/ / /

/ / /

38.    The names, current hourly rates, hours worked and lodestar for the attorneys, law clerks and paralegals who worked on this case are set forth in the table below.

| Attorney | Hours | Hourly | Lodestar |
|---|---|---|---|
| Randy Renick | 507.2 | $575.00 | $291,640.00 |
| Virginia Keeny | 67.6 | $600.00 | $40,560.00 |
| Josh Piovia-Scott | 270.9 | $425.00 | $115,132.50 |
| Fernando Gaytan | 10.8 | $450.00 | $4,860.00 |
| Maria Stroud | 87.3 | $225.00 | $19,642.50 |
| Mary Cervantez | 166.7 | $175.00 | $29,172.50 |
| Ben Stormer | 66.7 | $225.00 | $15,007.50 |
| Denise Ballesteros | 129.35 | $225.00 | $29,103.75 |
|  | 1,206.55 |  | $545,118.75 |

## ATTORNEY'S FEES-ALL FIRMS

39.    The Settlement Agreement provides that class counsel may seek an award of attorney's fees and reasonable litigation costs in an amount not to exceed 30% of the total settlement amount of $3,900,000. Class counsel's fee request, however, is limited to 25% or $975,000, plus costs.

40.    The Quintilone, Carter and Gould firms' lodestars are set forth in their Declarations which are to be filed with the Court. The lodestar for all firms representing Plaintiffs totals $742,871 and is set forth below:

| Firm | Hours | Lodestar |
|---|---|---|
| Hadsell Stormer Keeny Richardson & Renick | 1,306.55 | $535,417.50 |
| Law Offices of Quintilone, Carter | 260.80 | $155,369.00 |

14

**DECLARATION OF RANDY RENICK IN SUPPORT OF MOTION FOR FINAL APPROVAL OF SETTLEMENT AGREEMENT; EXHIBITS**

| Law Offices of Michael Gould | 112.30 | $52,085.00 |
| Totals | 1679.65 | $742,871.50 |

## COSTS

41.     Hadsell Stormer Keeny Richardson & Renick, LLP. has incurred $14,339.51 in unreimbursed costs and expenses in prosecuting this case. All of these costs and expenses were reasonable and necessary to bring this case to closure. The costs include $5,000 in Mediation fees for Mark Rudy, $4,625 for expert Setec Investigations, $350 in filing fees; $3,001.62 for travel expenses including the mediation in San Francisco, California, $1,006 for copies and facsimiles; $23.60 for postage, and $333.29 for courier delivery. All of the categories of costs sought here are typically billed to a client.

42.     As set forth in their declarations of Roger Carter and Richard Quintilone, counsel for Le-Nguyen and Lewis incurred costs of $2,316.57 and Gould & Associates incurred costs of $2,147.17. In total, Plaintiffs seek reimbursement of $29,463.74 in costs.

## MULTIPLIER

43.     The litigation of this case precluded my firms from taking other cases. All of the Plaintiffs' firms who worked on the case are smaller firms, with less than 15 lawyers collectively. As a result, the number of cases my firm is able to take is limited and my firm is extremely selective about the cases that we do take. Our firm must regularly decline to take cases which it believes are meritorious and but for the issue of staffing, would otherwise accept. Taking on larger class action cases, such as the present case, utilizes a significant portion of my firms' staff and resources and prevents the firms from taking cases which are likely to be equally or more remunerative than the present case.

44.     Applying that skill and experience litigating wage and hour class action cases, my co-counsel and I were able to efficiently litigate this case. While

**DECLARATION OF RANDY RENICK IN SUPPORT OF MOTION FOR FINAL APPROVAL OF SETTLEMENT AGREEMENT; EXHIBITS**

this case involved many factual nuances not seen in other wage and hour class action cases, our experience allowed us to prosecute the litigation with fewer attorney's hours than less experienced firms. We also used paralegals to handle the large amounts of data and discovery as well as to work with class members, tasks that many other firms utilize attorneys to do. Given the nature of the workforce at issue here – many of which no longer work for Defendants - it was difficult and time consuming for Plaintiffs' counsel to locate and to establish communication with class members. Such communications were necessary to develop the evidence in the case and to assist class members in filing a claim once the case had settled. Based upon my skill and experience litigating wage and hour class action cases, I believe that the settlement reached is fair and provides an excellent result for the class.

### FEES CHARGED BY ATTORNEYS IN THE LOS ANGELES LEGAL COMMUNITY

45.     During my years of law practice, I have become familiar with the kind of fees that are prevalent in successful contingent cases in Southern California. While I have gained this knowledge in a variety of ways, I have gathered most information about these matters in the course of preparing fee motions both for my own firm and for other attorneys who have requested my firm to submit fee declarations on their behalf. In this context, I have obtained numerous declarations from attorneys knowledgeable about the rates charged by attorneys in the Los Angeles legal market and about the expected return for work done on cases in which any recovery of a fee is contingent upon success on the merits.

46.     I remain current on the rates charged by attorneys similar in stature and experience to myself. In addition, over the past 36 months, I have reviewed filings by co-counsel in numerous antitrust class actions, including *In re Natural Gas, In re NBR, In re DRAM and Plastic Additives* State cases. My hourly rate, as well as the rates for those working at my firm, are consistent with the rates of similarly experienced individuals in the Southern California legal community.

16

### NOTICE OF THE MOTION FOR ATTORNEY'S FEES AND COSTS

47.     In order to comply with the recent Ninth Circuit opinion *In re Mercury Interactive Corp. Sec. Litig.*, ___ F.3d ___, 2010 WL 3239460 (9th Cir. Aug. 18, 2010), the Claims Administrator will send a postcard to each class member advising them: 1) the Motion for Final Approval and for Attorney's Fees and Costs has been filed with the Court; 2) that the filings are for review on the Claims Administrator's Website; 3) the website address; and that 4) class members have 10 days from the date of mailing to file any objections to the Application for the Award of Fees and Costs.

I declare under penalty of perjury pursuant to the laws of the State of California that the foregoing is true and correct and that this declaration was executed on August 30, 2010, in Pasadena, California.


HADSELL STORMER KEENY
RICHARDSON & RENICK, LLP


By _____/s/_____
              Randy Renick
         Attorneys for Plaintiffs

**DECLARATION OF RANDY RENICK IN SUPPORT OF MOTION FOR FINAL APPROVAL OF SETTLEMENT AGREEMENT; EXHIBITS**

# EXHIBIT A

1 | MORGAN, LEWIS & BOCKIUS LLP
JOHN S. BATTENFELD, SBN: 119513
2 | email: jbattenfeld@morganlewis.com
JASON S. MILLS, SBN: 225126
3 | email: jmills@morganlewis.com
DONNA MO, SBN: 240621
4 | email: dmo@morganlewis.com
300 South Grand Avenue
5 | Twenty-Second Floor
Los Angeles, California 90071-3132
6 | Phone: 213.612.2500
Fax: 213.612.2501
7 |
MORGAN, LEWIS & BOCKIUS LLP
8 | ANNE MARIE ESTEVEZ, admitted *pro hac vice*
9 | email: aestevez@morganlewis.com
5300 Wachovia Financial Center
10 | 200 South Biscayne Boulevard
Miami, FL 33131-2339
11 | Phone: 305.415.3000
Fax: 305.415.3001
12 |
Attorneys for Defendants
13 | ARAMARK CORPORATION and
ARAMARK SPORTS, LLC (formerly
14 | ARAMARK SPORTS, INC.)

15 | *Plaintiffs' counsel listed on following pages*

16 |

17 | UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

18 |

19 | GENARO ZENDEJAS MORALES, RICKY SILVA and CHRISTIAN SANCHEZ, on behalf of themselves | Master File No. 2:09-cv-05565-JHN-MLGx
20 | and all others similarly situated, | **CLASS ACTION**

21 | Plaintiffs, | **JOINT STIPULATION OF SETTLEMENT**
22 | vs.

23 | ARAMARK CORPORATION, a
Delaware Corporation formerly known
24 | as ARAMARK SERVICES, INC.;
ARAMARK SPORTS, INC.,
25 | ARAMARK SPORTS, LLC and
DOES 1-200, inclusive,
26 |
Defendants.
27 |

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DB1/64227746.9

1    KRISTINA LE-NGUYEN, an
     individual, and CAMILLE LEWIS,
2    an individual, on behalf of
     themselves, and on behalf of all
3    others similarly situated,

4                        Plaintiffs,

5                 vs.

6    ARAMARK CORPORATION; a
     Delaware Corporation; and DOES 1
7    through 100, Inclusive,
     Defendants.

8

9    Dan Stormer, Esq. (SBN 101967)
     Randy Renick, Esq. (SBN 179652)
     Joshua Piovia-Scott, Esq. (SBN 222364)
10   Hadsell Stormer Keeny Richardson & Renick, LLP
     128 N. Fair Oaks Avenue
11   Pasadena, CA  91103
     Phone: 626-585-9600
12   Fax: 626-577-7079
     *Interim Lead Class Counsel*
13

     Richard E. Quintilone II (SBN 200995)
14   Quintilone & Associates
     22974 El Toro Road, Suite 100
15   Lake Forest, CA  92630-4961
     Phone: 949-458-9675
16   Fax: 949-458-9679

17   Michael A. Gould (SBN 151851)
     Aarin A. Zeof (SBN 247088)
18   Gould & Associates
     A Professional Law Corporation
19   17822 E. 17th Street, Suite 106
     Tustin, CA 92780
20   Phone: 714-669-2850
     Fax:  714-554-0800
21

     Richard A. Jones (SBN 117679)
22   Law Offices of Richard A. Jones
     1820 E. 17th Street
23   Santa Ana, CA  92705
     Phone: 714-480-0200 / Fax: 714-480-0423
24

     Roger R. Carter, Esq. (SBN 140196)
25   The Carter Law Firm
     2030 Main Street, Thirteenth Floor
26   Irvine, CA  92614-7220
     Phone: 949-260-4737 / Fax: 949-260-4754
27   *Attorneys for Plaintiffs*

28

This Joint Stipulation of Settlement ("Stipulation" or "Settlement") is made and entered into, as of the date set forth below, between the Settling Plaintiffs Genaro Zendejas Morales, Ricky Silva, Christian Sanchez, Kristina Le-Nguyen, Camille Lewis, Michelle Holtz, and Irby Brown as individuals and as representatives of the proposed Settlement Class described herein (collectively "Plaintiffs") and Defendants ARAMARK CORPORATION, ARAMARK SPORTS, LLC, formerly known as ARAMARK SPORTS INC., ARAMARK SM MANAGEMENT SERVICES, INC., and ARAMARK SERVICES, INC. (collectively "Defendants"), who are parties to the above-captioned litigation (together, the "Parties").

1.   **THE CONDITIONAL NATURE OF THIS STIPULATION**

1.1     This Stipulation and all associated exhibits or attachments are made for the sole purpose of settling the above-captioned action. This Stipulation and the Settlement it evidences are made in compromise of disputed claims. Because this action was pled as a class action, this Settlement must receive preliminary and final approval by the Court. Accordingly, the Settling Parties (as defined herein) enter into this Stipulation and associated Settlement on a conditional basis. If the Court does not enter the Order of Final Approval, the proposed Judgment does not become a Final Judgment for any reason, and/or the Effective Date does not occur, this Stipulation shall be deemed null and void ab initio; it shall be of no force or effect whatsoever; it shall not be referred to or utilized for any purpose whatsoever; and the negotiation, terms and entry of the Stipulation shall remain subject to the provisions of Federal Rule of Evidence 408, California Evidence Code sections 1119 and 1152, and any other analogous rules of evidence that are applicable, as well as the Confidentiality Agreement between the Parties, dated November 16, 2009 and the Confidentiality Agreement signed by the Parties at mediation on January 6, 2010.

1

2      1.2    Defendants deny all claims as to liability, damages, penalties, interest,

3  fees, restitution, injunctive relief and all other forms of relief as well as the class

4  allegations asserted in the Action, as that term is defined below. Defendants have

5  agreed to resolve the Action via this Stipulation, but to the extent this Stipulation is

6  deemed void or the Effective Date does not occur, Defendants do not waive, but

7  rather expressly reserve, all rights to challenge all such claims and allegations in the

8  Action upon all procedural, merit, and factual grounds, including, without

9  limitation, the ability to challenge class treatment on any grounds, as well as

10  asserting any and all other privileges and potential defenses. The Class

11  Representatives and Class Counsel (as defined below) agree that Defendants retain

12  and reserve these rights, and the Class Representatives and Class Counsel agree not

13  to argue or present any argument, and hereby waive any argument that, based on

14  this Stipulation, Defendants cannot contest class certification on any grounds

15  whatsoever, or assert any and all other privileges or potential defenses if this Action

16  were to proceed.

17  2.    **DEFINITIONS**

18      The following terms, when used in this Joint Stipulation of Settlement, shall

19  have the following meanings:

20      2.1    "Action" means the above captioned action, identified as *Morales, et*

21  *al. v. ARAMARK Corporation, et al.*, U.S. District Court, Central District of

22  California, Master File No. 2:09-cv-05-05565-JHN-MLGx which is a consolidation

23  and joinder of four actions as described below.

24      2.2    "ARAMARK Releasees" means ARAMARK CORPORATION,

25  ARAMARK SPORTS, LLC, ARAMARK SPORTS, INC., ARAMARK SPORTS

26  AND ENTERTAINMENT SERVICES, LLC, ARAMARK ENTERTAINMENT,

27  LLC, ARAMARK SM MANAGEMENT SERVICES, INC., ARAMARK

28  SERVICES, INC., ARAMARK MANAGEMENT SERVICES LP, ARAMARK

FACILITY SERVICES, LLC, ARAMARK RAIL SERVICES, LLC, ARAMARK

REFRESHMENT SERVICES, LLC, TRAVEL SYSTEMS, LLC, ARAMARK BUSINESS FACILITIES, LLC, ARAMARK INTERMEDIATE HOLDCO CORPORATION, ARAMARK HOLDINGS CORPORATION, ARAMARK SMMS, LLC (collectively, the "ARAMARK Entities"), and each of their past, present and/or future, direct and/or indirect, officers, directors, employees, agents, representatives, attorneys, insurers, partners, investors, shareholders, administrators, parent companies, subsidiaries, affiliates, divisions, predecessors, successors and/or assigns.

2.3    "Business and Industries Group" is the line of business that provides food, retail, facility and logistical services that include management and operations of cafeterias, coffee kiosks and sundries shops, as well as catering services, typically on the campuses, facilities, or other property of corporations.

2.4    "Claim Form" means the form entitled "Claim Form" in the same or substantially in the form attached hereto as Exhibit B. A timely and completed Claim Form must be submitted to the Claims Administrator for a Class Member to claim his/her share of the Settlement Pool and the Claim Form will also serve as written consent to become a party plaintiff pursuant to Section 216(b) of the FLSA.

2.5    "Claims Administrator" means Gilardi & Co, LLC.

2.6    "Claims Period Deadline" shall be the date ninety (90) days after the Settlement Documents are mailed to the Class Members by the Claims Administrator. However, Defendants, in their sole and absolute discretion, may elect to accept claims after the Claims Period Deadline has expired.

2.7    "Class" means all current and former employees of the ARAMARK Entities who were classified as non-exempt (i.e., overtime eligible) and who work or worked for any ARAMARK Entities or their predecessors, assigns and/or related companies at locations in the Sports & Entertainment and/or Business and

1

2  Industries Group lines of business in California at any time between July 29, 2005

3  through the Preliminary Approval Date ("Class Period").[1]

4  2.8    "Class Counsel" means, collectively, Hadsell Stormer Keeny

5  Richardson & Renick, LLP, Gould & Associates, Law Offices of Richard A. Jones,

6  the Carter Law Firm, and Quintilone & Associates with Hadsell Stormer Keeny

7  Richardson & Renick, LLP designated as Lead Class Counsel.

8  2.9    "Class Member" means each person eligible to participate in this

9  Settlement who is a member of the Class defined above.

10  2.10  "Class Period" means the time period July 29, 2005 through the

11  Preliminary Approval Date.

12  2.11  "Class Representatives" means Plaintiffs Genaro Zendejas Morales,

13  Ricky Silva, Christian Sanchez, Irby Brown, Michelle Holtz, Kristina Le-Nguyen,

14  and Camille Lewis.

15  2.12  "Class Representatives' Released Claims" means any and all claims,

16  obligations, demands, actions, rights, causes of action, and liabilities against the

17  ARAMARK Releasees (as defined above), of whatever kind and nature, character,

18  and description, whether in law or equity, whether sounding in tort, contract,

19  federal, state and/or local law, statute, ordinance, regulation, common law, or other

20  source of law or contract, whether known or unknown, and whether anticipated or

21  unanticipated, including all unknown claims covered by Civil Code Section 1542,

22  as quoted in 6.8.4 below, by the Class Representatives, arising at any time up to and

23  including the date on which the Court enters the Order of Final Approval, for any

24  type of relief, including without limitation claims for wages, pay, unreimbursed

25  expenses, damages, unpaid costs, penalties (including waiting time penalties),

26  liquidated damages, punitive damages, interest, attorneys' fees, litigation and other

27  costs, expenses, restitution, and equitable and declaratory relief. The Class

28  Representatives' Released Claims include, but are not limited to the Released

[1] A list of these locations has been provided to Class Counsel.

1
2  Claims as well as any other claims under any provision of the Fair Labor Standards
3  Act, the California Labor Code[2], any applicable California Industrial Welfare
4  Commission Wage Orders, or any city or county Living Wage Ordinances, and
5  claims under state or federal discrimination statutes, including, without limitation,
6  the California Fair Employment and Housing Act, California Government Code
7  § 12940 *et seq.*; the Unruh Civil Rights Act, California Civil Code § 51 *et seq.*; the
8  California Constitution; the California Business and Professions Code; the United
9  States Constitution; the Age Discrimination in Employment Act and the Older
10  Workers Benefit Protection Act; the Uniformed Services Employment and
11  Reemployment Rights Act (USERRA), Title VII of the Civil Rights Act of 1964,
12  42 U.S.C. § 2000 *et seq.*; the Family and Medical Leave Act; the Americans with
13  Disabilities Act, 42 U.S.C. § 12101 *et seq.*; and the Employee Retirement Income
14  Security Act of 1974, 29 U.S.C. § 1001 *et seq.*; and all of their implementing
15  regulations and interpretive guidelines.

16      2.13  "Consolidated Complaint" means the First Consolidated Amended
17  Class Action Complaint filed December 31, 2009.[3]

18      2.14  "Court" shall mean the U.S. District Court, Central District of
19  California.

20      2.15  "Defendants' Counsel" means Morgan, Lewis & Bockius LLP.

21      2.16  "Effective Date" means the date on which the Judgment becomes a
22  Final Judgment.

23      2.17  "Final Approval Date" means the date on which the Court enters the
24  Order of Final Approval.

25      2.18  "Final Approval Hearing" means a hearing set by the Court, to take
26  place on a date after the 90 day period for the Class Action Fairness Act ("CAFA")
27  notice has run, for the purpose of (i) determining the fairness, adequacy, and

28  ———————————
[2] References to the "Labor Code" herein shall be to the California Labor Code.
[3] After the Court issued a Notice of Electronic Deficiency, Plaintiffs refiled the Consolidated Complaint manually on January 4, 2010.

1

2  reasonableness of the Stipulation terms and associated Settlement pursuant to class

3  action procedures and requirements; (ii) determining the amount of the award of

4  attorneys' fees and costs to Class Counsel; (iii) determining the amount of the

5  Service Payment to Class Representative; and (iv) entering the Judgment.

6      2.19  "Final Judgment" means the latest of the following dates: (i) if no

7  Class Member files an objection to the Settlement, then the date the Court enters a

8  judgment dismissing the Action and an Order of Final Approval of the Settlement;

9  (ii) if a Class Member files an objection to the Settlement, then after the applicable

10  date for seeking appellate review of the District Court's final approval of the

11  Settlement has passed, assuming no appeal or request for review is filed; and (iii) if

12  an appeal is filed, the final resolution of that appeal (including any requests for

13  rehearing and/or petitions for writ of certiorari) resulting in the final judicial

14  approval of the Settlement. Notwithstanding the foregoing, any proceeding, order,

15  or appeal pertaining solely to the award of attorneys' fees or costs or Service

16  Payments shall not by itself in any way delay or preclude the Judgment from

17  becoming a Final Judgment.

18      2.20  "Judgment" means the judgment to be executed and filed by the Court

19  pursuant to this Stipulation following the Final Approval Hearing.

20      2.21  "Maximum Settlement Amount" is the sum of Three Million Nine

21  Hundred Thousand U.S. Dollars ($3,900,000), which represents the maximum

22  amount payable in this Settlement by Defendants, which includes, without

23  limitation, attorneys' fees and costs, costs of settlement administration by the

24  Claims Administrator, Service Payments to Class Representatives, payment in the

25  amount of $39,000 for Private Attorneys General Act ("PAGA") penalties, and the

26  amounts payable to Qualified Claimants. The Maximum Settlement Amount shall

27  not include the Qualified Settlement Fund's share of payroll taxes which

28  Defendants shall pay for amounts paid to Qualified Claimants that are attributable

to wages and business expense reimbursements as described in Section 6.7.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

2.22 "Notice of Settlement" shall mean the document attached hereto as Exhibit A.

2.23 "Parties" shall mean Defendants, ARAMARK Entities, and Settling Plaintiffs.

2.24 "Preliminary Approval Date" means the date the Court approves the Stipulation of Settlement, and the exhibits thereto, and enters an Order providing for notice to the Class, an opportunity to opt out of the Class, an opportunity to submit timely objections to the settlement, a procedure for submitting claims, and setting a hearing on the fairness of the terms of settlement, including approval of Service Payments and attorneys' fees and costs.

2.25 "Qualified Claimant" means a Class Member who has timely submitted a correctly completed and signed Claim Form. A Qualified Claimant shall also include a Class Member who has submitted a correctly completed and signed Claim Form, that is late, but the Claim Form is accepted by Defendants, in their sole discretion, as provided herein.

2.26 "Released Claims" shall mean any and all wage and hour and pay related claims under California law, the Fair Labor Standards Act (FLSA), federal, state or local laws and/or ordinances, or tort or contract theories, whether known or unknown, and whether anticipated or unanticipated, including unknown claims covered by Civil Code Section 1542, as quoted in Section 6.8.2, below, that accrued or accrue through the Final Approval Date, and that were or could have been asserted in the Action, including but not limited to claims for: failure to pay all wages and other compensation, failure to pay overtime, failure to pay for all hours worked, failure to timely pay final or other wages, failure to provide meal and rest breaks, failure to pay premium pay for missed meal and/or rest breaks, failure to reimburse and/or indemnify employees for the purchase and maintenance of uniforms and/or for employee expenses, alleged violations of living wage ordinances, and/or failure to keep and furnish accurate wage statements, including

1

2 but not limited to any and all claims for recovery of wages, overtime pay, minimum

3 wage, premium pay, penalties, and/or liquidated damages under the FLSA,

4 California's Wage Orders, and/or claims under the California Labor Code including

5 but not limited to Sections 201, 202, 203, 204, 204.3, 210, 218.5, 218.6, 221, 222,

6 223, 224, 226, 226.3, 226.7, 450, 510, 512, 558, 1174, 1175, 1182 *et seq.*, 1194,

7 1194.2, 1197, 1197.1, 1198, 2802, and the Private Attorneys General Act, 2698 *et*

8 *seq.*, claims under any and all city and county Living Wage Ordinances, including

9 but not limited to the cities and/or counties of San Francisco, San Diego, and Los

10 Angeles, all waiting time penalties that were sought or could have been sought in

11 the Consolidated Complaint, other penalties, related tort, contract, and punitive

12 damages claims, claims for interest, attorneys' fees, litigation and other costs,

13 expenses, restitution, and equitable and declaratory relief, and violations of the

14 California Business & Professions Code, and/or 29 U.S.C. §§206, 211(c) and

15 215(a). Notwithstanding the foregoing, for Settling Plaintiffs who do not submit

16 Claim Forms or submit late Claim Forms that are not accepted by Defendants, their

17 Released Claims will not include claims under the FLSA.

18

19 2.27 "Service Payment" means the amount approved by the Court to be

paid to the Class Representatives, in recognition of their efforts in coming forward

20 as Class Representatives and as consideration for a full, general, and comprehensive

21 release of the Class Representatives' Released Claims. Service Payments for the

22 Class Representative shall not exceed Seven Thousand Five Hundred Dollars

23 ($7,500) each.

24 2.28 "Settlement Documents" shall mean the Notice of Settlement (Exhibit

25 A) and the Claim Form (Exhibit B).

26 2.29 "Settlement Payment" means the amount due each Qualified Claimant

27 under the terms of this Stipulation.

28

1

2      2.30   "Settling Parties" shall mean Defendants, ARAMARK Entities, and

3   Settling Plaintiffs.

4      2.31   "Settling Plaintiffs" and/or "Settlement Class" shall mean all Class

5   Members who do not timely send a signed and returned valid Opt-Out Request to

6   the Claims Administrator.

7      2.32   "Settlement Pool" is the portion of the Maximum Settlement Amount

8   available for distribution to Qualified Claimants. It equals the Maximum

9   Settlement amount less attorneys' fees and costs, settlement administration costs,

10   the Class Representative Service Payments, and payments to the State of California

11   for PAGA penalties.

12      2.33   "Sports and Entertainment Group" is the line of business that provides

13   food, beverage, facilities, and retail services such as catering, restaurant operations,

14   concessions, in-seat dining, hawking, and merchandise concession stand sales at

15   sports and entertainment venues in California.

16      2.34   "Stipulation of Settlement" or "Stipulation" or "Settlement" shall

17   mean this Joint Stipulation of Settlement, signed by counsel for all of the Parties.

18      2.35   "Weeks Worked" shall mean the number of weeks for which the Class

19   Member received pay for work in California in a non-exempt position for an

20   ARAMARK Entity listed in the list of locations given to Class Counsel as

21   discussed in footnote 1, calculated and weighted pursuant to Section 6.7.

22   3.      **DESCRIPTION OF THE LITIGATION**

23      3.1   *Morales v. ARAMARK Corporation, et al.,* Master File No. 2:09-cv-

24   05565-JHN-MLGx is a consolidation of two (2) putative class actions and the

25   joinder of Michelle Holtz and Irby Brown as class representatives as described

26   below. On July 29, 2009, Plaintiffs Genaro Zendejas Morales, Ricky Silva, and

27   Christian Sanchez filed the a putative class action complaint against Defendants,

28   *Morales, et al. v. ARAMARK Corporation, et al.,* District Court of California,

Central District Case No. CV09-5565 CBM (MLGX). The *Morales* action

included claims for failure to provide meal and rest periods, nonpayment of wages, failure to keep and furnish accurate wage statements, failure to pay overtime, failure to properly pay wages upon termination, unfair competition under section 17200 of the Business & Professions Code, punitive damages, and civil penalties under PAGA. The unconsolidated *Morales* action was brought on behalf of a proposed class of all nonexempt current, former, and future employees employed at various locations in California within Defendants' Business and Industries Group and Sports and Entertainment Group. An amended complaint was filed in the unconsolidated *Morales* action on September 21, 2009 which restated all of the same claims as were in the original complaint, except that it did not include a claim for punitive damages. Allegations were made under the following statutes in the unconsolidated *Morales* action: Labor Code sections 201, 203, 204, 210, 218.5, 218.6, 226, 226.3, 226.7, 510, 512, 1182 et. seq., 1194, 1194.2, 2698 *et seq.*; Business & Professions Code sections 17200 *et seq.*; and applicable IWC Wage Orders.

3.2    On August 5, 2009, Plaintiffs Kristina Le-Nguyen and Camille Lewis filed a putative class action complaint against Defendants in Orange County Superior Court, *Le-Nguyen, et al. v. ARAMARK Corporation,* California Superior Court, County of Orange, Case No. 30-2009-00290440. The *Le-Nguyen* action also included claims for failure to pay overtime compensation, failure to provide meal and rest periods, failure to provide itemized wage statements, failure to pay wages for hours worked, failure to pay wages due and payable twice each month, failure to reimburse employee expenses, unlawful competition under section 17200 of the Business & Professions Code, as well as civil penalties under PAGA. The *Le-Nguyen* action was brought on behalf of two proposed subclasses which include current and former non-exempt hourly employees of ARAMARK Corporation in California. Allegations were made under the following statutes in the *Le-Nguyen*

1

2 complaint: Labor Code sections 204.3, 204, 210, 218.5, 226, 226.7, 512, 1194,

3 1197, 1198; 2698, 2699, 2802; Cal. Code Reg., Title 8, §§11040; Business and

4 Professions Code sections 17200 *et seq.*; and Wage Order 4-2001. The *Le-Nguyen*

5 action was removed to the Central District on or about September 9, 2009.

6     3.3    On December 2, 2009, Judge Florence-Marie Cooper issued an order

7 consolidating *Le-Nguyen* with *Morales* as *Morales v. ARAMARK Corporation, et*

8 *al.*, Master File No. 2:09-cv-05565-JHN-MLGx (the "Consolidated Action") and

9 appointing Hadsell Stormer Keeny Richardson & Renick, LLP as Interim Lead

10 Class Counsel for the plaintiff class.

11     3.4    On June 18, 2009, Plaintiff Michelle Holtz filed a putative class action

12 complaint against Defendants, *Holtz v. ARAMARK SM Management Services, Inc.*,

13 Orange County Superior Court, Case No. 30-2009-00277368. The *Holtz* action was

14 limited to claims for failure to provide and maintain uniforms, waiting time

15 penalties, and unfair business practices under section 17200 of the Business &

16 Professions Code. The *Holtz* action was brought on behalf of two proposed

17 subclasses of current and former hourly paid workers employed by Defendant in

18 California within the applicable statute of limitations. The *Holtz* action was

19 removed to federal court on July 20, 2009 (United States District Court, Central

20 District of California, Case No. SACV 09-840-JVS (JCx)). Allegations were made

21 under the following statutes in the *Holtz* Action: Labor Code sections 201, 202,

22 203, 221, 450, 2802; Business & Professions Code sections 17200 et seq; and Wage

23 Order 5-2001, which are all encompassed in the Consolidated Action.

24     3.5    On September 4, 2009, Plaintiff Irby Brown filed a putative class

25 action complaint against Defendants, *Brown v. ARAMARK Sports, LLC*, Orange

26 County Superior Court Case No. 30-2009-00180158. The *Brown* action included

27 claims for failure to provide meal and rest periods, failure to provide correct

28 itemized wage statements; failure to pay discharged employees, and unfair business

practices under section 17200 of the Business and Professions Code. The *Brown*

action was brought on behalf of five proposed subclasses that included former and current cooks of ARAMARK Sports, LLC employed in California during the applicable statutes of limitations which are encompassed in the *Morales* and *Le-Nguyen* actions. The *Brown* action was removed to federal court on December 4, 2009 (United States District Court, Central District of California, Case No. 8:09-cv-01424-JVS-RNB). Allegations were made under the following statutes in the *Brown* action: Labor Code sections 201, 202, 203, 204, 226, 226.7, 512, Business and Professions Code section 17200 *et seq.*; and Wage Order 5-2001, which are all encompassed in the Consolidated Action

3.6     On December 31, 2009, a First Consolidated Amended Class Action Complaint (the "Consolidated Complaint") was filed in the Consolidated Action and Michelle Holtz and Irby Brown joined the Consolidated Action as named plaintiffs. The Consolidated Complaint asserts claims for failure to provide meal and rest periods, nonpayment of wages, failure to keep and furnish accurate wage statements, failure to pay overtime, failure to properly pay wages upon termination, failure to reimburse employee expenses, unfair competition under section 17200 of the Business & Professions Code, punitive damages, and civil penalties under PAGA. Allegations are made under the following statutes in the Consolidated Complaint: Labor Code sections 201, 203, 204, 210, 218.5, 218.6, 221, 226, 226.3, 226.7, 510, 512, 1182 et. seq., 1194, 1194.2, 2698 *et seq.*, 2802; Business & Professions Code sections 17200 *et seq.*; and applicable IWC Wage Orders, covering all claims brought in the *Le-Nguyen, Brown,* and *Holtz* actions.

3.7     On January 6, 2010, the Consolidated Action was transferred to the Honorable Jacqueline H. Nguyen and the case number changed to 2:09-cv-05565-JHN-MLGx.

3.8     On January 11, 2010, a Stipulation of Dismissal, executed by the *Brown* plaintiff and defendants, was filed by the *Brown* defendants, and an Order

1

2   dismissing the *Brown* case, without prejudice, was entered by the Court on January

3   12, 2010.

4      3.9     On January 14, 2010, a Stipulation of Dismissal, executed by the *Holtz*

5   plaintiff and defendants, was filed by the *Holtz* defendants, and an Order dismissing

6   the *Holtz* case without prejudice was entered by the Court on January 15, 2010.

7      3.10    Through substantial informal discovery occurring over a period of

8   many months, Defendants provided Plaintiffs' counsel with thousands of

9   documents, voluminous data, analysis, sample testimony, policies, collective

10   bargaining agreements, samples and spreadsheets reflecting employees' time

11   worked, and supporting records, including time records, meal period logs and other

12   evidence of meal periods for sampling periods during the class period for various of

13   Defendants' components/locations in California, and compensation information and

14   data for the vast majority of the proposed class.

15      3.11    On January 6, 2010, the Parties participated in a mediation with

16   mediator Mark Rudy in San Francisco, California. The Parties reached an

17   agreement on settlement at the mediation and all of the terms of that settlement are

18   contained within this Stipulation of Settlement. At all times, the Parties' settlement

19   negotiations have been non-collusive, adversarial, and at arm's length.

20   In the Action, Defendants contended that, as established by *Kenny v. Supercuts,*

21   *Inc.*, 2008 WL 2265194 (N.D. Cal. June 2, 2008); *Blackwell v. SkyWest Airlines,*

22   *Inc.*, 245 F.R.D. 453, 467 (S.D. Cal. 2007); *Brown v. Federal Express Corp.*, 249

23   F.R.D. (C.D. Cal. 2008); *White v. Starbucks*, 497 F.Supp.2d 1080 (N.D. Cal. 2007);

24   *Perez v. Safety-Kleen Systems, Inc.* 2008 WL 2949268 (N.D.Cal. July 28, 2008);

25   *Salazar v. Avis Budget Group*, 251 F.R.D. 529 (S.D. Cal. July 2, 2008.); *Kimoto v.*

26   *McDonald's Corp.*, 2008 WL 4069611; and *Gabriella v. Wells Fargo Financial,*

27   *Inc.*, 2008 WL 3200190 (N.D. Cal. August 4, 2008), the issue of whether or not an

28   employee was forced to miss a meal or rest break on any given day is highly

dependent on individualized facts and numerous credibility determinations, and is

not susceptible to class wide determination. Defendants contended that timekeeping systems, operations, management and implementation and enforcement of meal periods varied among the numerous sites at issue in the Action and among the components within the larger sites, thus rendering class treatment inappropriate, a class action unmanageable, and Plaintiffs' individual claims atypical. Defendants further disputed the merits of Plaintiffs' claims and produced samplings of thousands of shifts, time records, logs, pay information, policies, collective bargaining agreements, putative class member declarations, and other voluminous documents and evidence which Defendants contended demonstrated that employees were provided their meal and rest periods, and paid in accordance with all applicable laws. Defendants further contended that the putative class members incurred no reasonable and necessary business expenses that were reimbursable under California law. The Defendants contended that the remaining claims raised by Plaintiffs were in large part brought as derivative of the claims discussed above, and were similarly disputed on several grounds by Defendants with substantial evidence and information supporting Defendants' defenses. Defendants also presented evidence that because Defendants' workforce includes thousands of seasonal, part-time, and temporary workers, approximately 1,000 of whom worked only one week or less for any of the ARAMARK Entities, the size of the putative class -- in terms of full-time equivalent employees for the four year statute of limitations period -- is approximately 15% the size of the total putative class here. Plaintiffs vigorously disagreed with Defendants' contentions, but took them into account in assessing the benefits to the class of reaching a settlement that rewarded substantial recovery to the class while avoiding the risks of further litigation. At the mediation the Parties discussed the potential exposure valuations of the action. Plaintiffs contended that the Action was appropriate for certification as a class action; that employees of the ARAMARK Releasees either missed meal and/or rest breaks and were entitled to one hour of pay for every each missed meal

1

2  and/or rest break; were not paid all wages and other compensation due; were not

3  paid all overtime due; were not paid all wages due at termination; were entitled to

4  reimbursement for uniform and other business expenses; were entitled to penalties

5  and interest for inaccurate wage statements; and were entitled to restitution. The

6  agreed upon settlement sum was reached after evaluating the competing theories of

7  potential exposure, as well as Plaintiffs' claims for interest and penalties. The

8  Parties, with the assistance of the mediator, also assessed appropriate discounts to

9  the potential liability based on Defendants' contentions set forth above.

10      3.12  Discussions between counsel for the Parties, informal discovery, as

11  well as the investigation and evaluation of the claims of Plaintiff by the Parties,

12  have permitted each side to assess the relative merits of the claims and the defenses

13  to those claims. The Parties agree that the above-described investigation and

14  evaluation, as well as discovery and the information exchanged during the

15  settlement negotiations, are sufficient to assess the merits of the respective Parties'

16  positions and to compromise the issues on a fair and equitable basis. Based on their

17  own independent investigations and evaluations, Class Counsel is of the opinion

18  that the Settlement with Defendants for the consideration and terms set forth below,

19  considering the representative and average class claims, and the risk of loss, is fair,

20  reasonable, and adequate in light of all known facts and circumstances, and is in the

21  best interests of the Class. Class Counsel is also of the opinion that the total

22  consideration and payment set forth in this Stipulation of Settlement is adequate in

23  light of the uncertainties surrounding the risk of further litigation, the possibility of

24  losing on class certification, and the possible defenses that Defendants have

25  asserted and could assert.

26  4.  **BENEFITS OF THE SETTLEMENT TO THE PROPOSED CLASS**

27      **AND DEFENDANTS**

28      4.1  Based on their own independent investigations and evaluations, Class

Counsel is of the opinion that the Settlement with Defendants for the consideration

1

2 and terms set forth below, considering the representative and average class claims,

3 and the risk of loss, is fair, reasonable, and adequate in light of all known facts and

4 circumstances, and is in the best interests of the Class. Class Counsel is also of the

5 opinion that the total consideration and payment set forth in this Stipulation of

6 Settlement is adequate in light of the uncertainties surrounding the risk of further

7 litigation, the possibility of losing class certification, and the defenses that

8 Defendants have asserted and/or could assert.

9     4.2    Class Counsel has weighed the monetary benefit under the Settlement

10 to the Settlement Class against the expenses and length of continued proceedings

11 that would be necessary to prosecute the Action against Defendants through class

12 certification, trial and possible appeals. Class Counsel has also taken into account

13 the uncertain outcome and risk of any litigation, especially in complex actions such

14 as class actions, as well as the difficulties and delay inherent in such litigation.

15 Therefore, Class Counsel has determined that the settlement set forth in this

16 Stipulation of Settlement is in the best interests of the Settlement Class.

17 5.    **DEFENDANTS' POSITION**

18     5.1    Defendants and the ARAMARK Entities on behalf of themselves and

19 the Defendant Releasees, specifically and generally deny any and all liability or

20 wrongdoing of any sort with regard to any of the claims alleged, make no

21 concessions or admissions of liability of any sort, and contend that for any purpose

22 other than Settlement, the Action is not appropriate for class action treatment.

23 Nonetheless, Defendants have concluded that further conduct of the Action would

24 be protracted, distracting and expensive, and that it is desirable that the Action be

25 fully and finally settled in the manner and upon the terms and conditions set forth in

26 this Stipulation. Defendants have also taken into account the uncertainty and risks

27 inherent in any litigation. Defendants have therefore determined that it is desirable

28 and beneficial to it to settle the Action in the manner and upon the terms and

conditions set forth in this Stipulation.

5.2    Neither this Stipulation of Settlement, nor any document referred to in it, nor any actions taken pursuant to this Stipulation of Settlement, is or should be construed as an admission by Defendants of any fault, wrongdoing, or liability whatsoever. Nor should the Stipulation of Settlement be construed as an admission that Plaintiffs collectively or individually could meet any of the class action elements contained in Rule 23, Fed.R.Civ.Pro. There has been no final determination by any court as to the merits of the claims asserted by Plaintiffs against Defendants or as to whether a class should be certified, other than for settlement purposes only.

5.3    Defendants and their counsel have concluded that it is desirable that the Action be settled in a manner and upon such terms and conditions set forth herein in order to avoid further expense, inconvenience and distraction of further legal proceedings, and the risk of the outcome of the Action. Therefore, Defendants have determined that it is desirable and beneficial to put to rest the claims in the Action.

6.    **OPERATIVE TERMS OF SETTLEMENT**

The Parties to this case agree as follows:

6.1    Class Certification

6.1.1    The Parties stipulate, for settlement purposes only, to the certification by the Court of the Class.

6.1.2    If, for any reason, the Court does not approve this Stipulation, fails to enter the Judgment, or if this Stipulation is terminated for any other reason, Defendants shall retain the right to dispute the appropriateness of class certification.

6.2    Maximum Settlement Payment

6.2.1    Defendants shall pay an amount not to exceed Three Million Nine Hundred Thousand U.S. Dollars ($3,900,000) as the Maximum Settlement Amount to resolve the Action on a class-wide basis, as described more fully below. The Maximum Settlement Amount includes the costs of administration of the

Morgan Lewis &
Bockius LLP
Attorneys At Law
. San Dix

settlement estimated at approximately one hundred twenty thousand dollars ($120,000), reasonable attorneys' fees and costs as determined by the Court (not to exceed 30% of the Maximum Settlement Amount) for Class Counsel, Service Payments to Class Representatives Genaro Zendejas Morales, Ricky Silva, Christian Sanchez, Kristina Le-Nguyen, Camille Lewis, Irby Brown and Michelle Holtz (not to exceed $7,500 each) and a Thirty Nine Thousand Dollar ($39,000) payment to the California Labor and Workforce Development Agency ("LWDA") for PAGA penalties, with the balance ("Settlement Pool") to pay the Settlement Payments to Qualified Claimants pursuant to Section 6.7 below. However, in the event that the amount claimed by Qualified Claimants as a group does not equal at least 30% of the amount of the Settlement Pool, instead of receiving his/her share of the Settlement Pool, each Qualified Claimant shall receive a pro-rated share of thirty percent (30%) of the Settlement Pool as described in Section 6.7, which would result in a higher payment to each Qualified Claimant. Any portion of the Maximum Settlement Amount remaining after payment of the costs of the administration of the settlement, attorneys' fees and costs, Class Representative Service Payments, payment to the LWDA for PAGA penalties, and Settlement Payments to the Qualified Claimants shall remain the property of Defendants.

6.3    Class Representative Service Payment

6.3.1  The Class Representatives' Service Payments will, subject to Court approval, be paid by Defendants in amounts not to exceed $7,500 for each Class Representative for service and assistance to the Class. Because the Service Payments represents payment to the Class Representatives for service to the Class Members and consideration for the General Release, taxes will not be withheld from the Service Payments. The Claims Administrator will report the Service Payments on a Form 1099, and any other required tax forms, and will provide to the Class Representatives and to the pertinent taxing authorities as required by law. The Class Representatives assume full responsibility for paying all taxes, federal

1
2 and state, if any, due as a result of the Service Payments and each agree to
3 indemnify Defendants for any such taxes owed by him/her. Any amount of the
4 Class Representative Service Payments that is not awarded by the Court shall be
5 retained by and/or revert to Defendants.

6 6.4    Attorneys' Fees and Costs

7           6.4.1  Class Counsel shall apply to the Court for an award of
8 reasonable attorneys' fees and costs not to exceed 30% of the Maximum Settlement
9 Amount. Defendant will not oppose Lead Counsel's request for Attorneys' Fees
10 and Costs.

11 6.5    Payment to LWDA for PAGA

12          6.5.1  Within fifteen (15) business days following Final Approval of
13 the Class Settlement, Defendants shall pay thirty nine thousand dollars ($39,000)
14 from the Maximum Settlement Amount to the LWDA as its share of the settlement
15 attributable to claims for civil penalties brought under PAGA.

16 6.6    Claims Administrator

17          6.6.1  The Claims Administrator shall be Gilardi & Co., LLC. The
18 fees and expenses reasonably incurred by the Claims Administrator as a result of
19 the procedures and processes expressly required by this Stipulation (the "Settlement
20 Administration Costs") shall be paid out of the Maximum Settlement Payment and
21 not exceed one hundred twenty thousand dollars ($120,000). The Settlement
22 Administration Costs shall include:  all costs of administering the Settlement,
23 including, but not limited to, all tax document preparation, custodial fees, and
24 accounting fees incurred by the Claims Administrator; all costs and fees associated
25 with preparing, issuing and mailing any and all notices and other correspondence to
26 Class Members and/or Qualified Claimants; all costs and fees associated with
27 communicating with Class Members, Class Counsel, and Defendants' Counsel; all
28 costs and fees associated with computing, processing, reviewing, and paying the
Settlement Payments, and resolving disputed claims; all costs and fees associated

1

2   with calculating tax withholdings and payroll taxes, making related payment to

3   federal and state tax authorities, and issuing tax forms relating to payments made

4   under the Settlement; all costs and fees associated with preparing any tax returns

5   and any other filings required by any governmental taxing authority or agency; all

6   costs and fees associated with preparing any other notices, reports, or filings to he

7   prepared in the course of administering Settlement Payments; and any other costs

8   and fees incurred and/or charged by the Claims Administrator in connection with

9   the execution of its duties under this Stipulation.  Notwithstanding the foregoing,

10  Defendants will pay over and above the Maximum Settlement Amount, the amount

11  calculated by the Claims Administrator that is equal to the Qualified Settlement

12  Fund's share of payroll taxes resulting from each Settlement Payment that is subject

13  to withholding (i.e. 55% of each Settlement Payment).

14          6.6.2  The actions of the Claims Administrator shall be governed by

15  the terms of this Stipulation and any Orders for the Court and any agreement by

16  counsel of record regarding communications with the Settlement Administrator.

17  Absent any agreement, Defendants may communicate with the Claims

18  Administrator with notice and/or copies to opposing counsel.

19          6.6.3  In the event that either Defendants or Class Counsel take the

20  position that the Claims Administrator is not acting in accordance with the terms of

21  the Stipulation, such party shall meet and confer first with opposing counsel and/or,

22  if necessary with the Claims Administrator or the Court to attempt to resolve the

23  issue.

24      6.7    Calculation of Settlement Payments

25          6.7.1  Each Class Member, except for the Class Representatives, will

26  be entitled to apply to receive a settlement payment (the "Settlement Payment").

27  The Settlement Payment eligibility for a Class Member shall be calculated as

28  follows:

1

2    (a)   Weeks Worked by Class Members is calculated by taking

3        the number of paychecks received by the Class Members

4        while working during the Class Period, with each

5        paycheck counting as one Week Worked, unless the

6        applicable pay period was bi-weekly, in which case the

7        paycheck will count as two Weeks Worked. Then, each

8        Week Worked that is a "Part Time workweek" as defined

9        below, will be counted as one-half of one Week Worked

10       and all other workweeks, i.e., "Non-Part Time

11       workweeks" will be counted as one Week Worked for

12       purposes of the payment formula and to determine the

13       Settlement Payment to be made to each Qualified

14       Claimant.[4] A Part Time workweek is defined as follows:

15       (i) if the employee is paid weekly, the weekly paycheck

16       was for less than 25.1 regular hours and (ii) if the

17       employee is paid bi-weekly, the bi-weekly paycheck was

18       for less than 50.1 regular hours. A Non-Part Time

19       workweek is defined as follows: (i) if the employee is

20       paid weekly, the weekly paycheck was for more than 25

21       regular hours and (ii) if the employee is paid bi-weekly,

22       the bi-weekly paycheck was for more than 50 regular

23       hours. The total of all Non-Part Time and Part Time

24       workweeks, calculated in the manner discussed in this

25       section, will be the Total Weeks Worked.

26    (b)   The Settlement Pool will be divided by the Total Weeks

27       Worked by all Class Members as calculated and

28

---

[4] The Parties came to the agreement on the weighting of workweeks to attempt to pay those employees who generally work shorter shifts and/or fewer days half the amount of those who work longer shifts and/or more days in the week.

described above in 6.7.1(a), above, to produce the dollar amount that will be paid for each Part Time Week Worked (paid at 50%) and Non-Part Time workweek (paid as one Week Worked): *(total Settlement Pool ÷ Total Weeks Worked = Workweek Payment.)* Each Qualified Claimant will be paid based on their individual Weeks Worked based on the following Formula: *(Total Part-Time workweek(s) x workweek payment x .50) + (total Non Part-Time workweek(s) x workweek payment x 1).* In the event, however, that the total amount claimed by all Qualified Claimants does not equal at least 30% of the Settlement Pool, the value of the Workweek Payment will be calculated as follows:  30% of the Settlement Pool divided by the total Weeks Worked by all of the Qualified Claimants as calculated in 6.7.1(a).  Each Qualified Claimant's payment will be determined using the Formula in 6.7.1(b) above, but with the new and higher workweek payment amount attributable to the minimum 30% payout requirement negotiated by the Parties.  Any amount of the Settlement Pool above the 30% minimum that is not distributed to Qualified Claimants shall remain the property of, and/or revert back to the Defendants.

6.7.2  The Parties recognize that the Settlement Payments to be paid to Class Members reflect settlement of a dispute over claimed wages, business expenses, interest, penalties, and other alleged damages.  Except for the Class Representative Service Payments described above to be paid to Plaintiffs, all Settlement Payments to Qualified Claimants are allocated as follows:  unpaid

1

2    wages and reimbursement to Class Members for business expenses they allegedly

3    incurred in the course of performing work for Defendants, including, but not

4    limited to, the purchase of non skid shoes, personal cell phone usage and mileage -

5    55% of each Settlement Payment, and interest and penalties - 45% of each

6    Settlement Payment. Defendants will pay the Qualified Settlement Fund's portion

7    of payroll taxes, including, but not limited to FICA and FUTA, on the portion of

8    each Settlement Payment allocated to unpaid wages and reimbursement for

9    business expenses. Class Members will be responsible for paying all other taxes

10   due on their Settlement Payments, and the Claims Administrator shall make

11   appropriate tax and withholdings from each Settlement Payment and pay the

12   employer portion of the taxes and withholdings, which will be provided by

13   Defendants to the Claims Administrator. Other than as set forth above, the Claims

14   Administrator will not make any deductions, withholdings, or additional payments,

15   including without limitation, medical or other insurance payments or premiums,

16   employee 401(k) contributions or matching employer contributions, wage

17   garnishments to extent permitted by law, or charity withholdings, from or with

18   respect to the payments to Class Members, and entry of the Order of Final

19   Approval by the Court shall be deemed authority not to make any such deductions,

20   withholdings, or additional payments.

21          6.7.3  Only Qualified Claimants shall be entitled to a Settlement

22   Payment. The Claims Administrator shall withhold from each Qualified Claimant's

23   Settlement Payment, Qualified Claimant's share of applicable payroll taxes.

24          6.7.4  Neither the Settlement nor any amounts paid under the

25   Settlement will modify any previously credited hours or service under any

26   employee benefit plan, policy, or bonus program sponsored by Defendants. Such

27   amounts will not form the basis for additional contributions to, benefits under, or

28   any other monetary entitlement under Defendants' sponsored benefit plans,

policies, or bonus programs. The payments made under the terms of this

1

2  Stipulation shall not be applied retroactively, currently, or on a going forward basis,

3  as salary, earnings, wages, or any other form of compensation for the purposes of

4  the ARAMARK Releasees' benefit plans, policies, or bonus programs.  The

5  ARAMARK Releasees retain the right to modify the language of their benefit

6  plans, policies and bonus programs to effect this intent, and to make clear that any

7  amounts paid pursuant to this Settlement are not for "hours worked," "hours paid,"

8  "hours of service," or any similar measuring term as defined by applicable plans,

9  policies and bonus programs for purposes of eligibility, vesting, benefit accrual, or

10  any other purpose, and that additional contributions or benefits are not required by

11  this Stipulation of Settlement.

12      6.8    Releases

13          6.8.1  Upon Final Approval, Plaintiffs and each Settling Plaintiff shall

14  be deemed to have fully, finally, and forever released the ARAMARK Releasees

15  from all Released Claims through the date of Final Approval.  Provided however,

16  that Settling Plaintiffs who do not submit Claims forms or submit late Claim forms

17  that are not accepted by Defendants, will not be deemed to have released claims

18  under the FLSA.

19          6.8.2  With respect to the Released Claims only, and subject to Section

20  6.8.1. above, Plaintiffs and each Settling Plaintiff, shall be deemed to have

21  expressly waived and relinquished, to the fullest extent permitted by law, the

22  provisions, rights, and benefits they may otherwise have had pursuant to Section

23  1542 of the California Civil Code, which provides as follows:

24

25          *A general release does not extend to claims which the*
           *creditor does not know or suspect to exist in his or her*

26          *favor at the time of executing the release, which if known*
           *to him or her must have materially affected his or her*
           *settlement with the debtor.*

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

6.8.3 Upon Final Approval, Class Representatives shall be deemed to have fully, finally, and forever released ARAMARK Releasees from all Class Representatives' Released Claims through the date of Final Approval.

6.8.4 In addition, the Class Representatives shall be deemed to have expressly waived and relinquished, to the fullest extent permitted by law, the provisions, rights, and benefits she may otherwise have had relating to the Class Representatives' Released Claims pursuant to Section 1542 of the California Civil Code, which provides as follows:

> *A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known to him or her must have materially affected his or her settlement with the debtor.*

6.8.5 The above releases given are conditional and shall only take effect unconditionally upon the Effective Date.

## 7. NOTICE TO CLASS AND CLAIM PROCEDURE

### 7.1 Preliminary Approval

7.1.1 Class Counsel and Defendants' Counsel shall jointly submit to the Court this Joint Stipulation of Settlement and exhibits thereto for preliminary approval by the Court. Class Counsel will prepare and file the Preliminary Approval papers for the Court. The Court's preliminary approval of this Settlement shall be embodied in an Order certifying the Class, preliminarily approving the Settlement and providing for Settlement Documents to be mailed to the Class in the general forms attached hereto as Exhibits A and B, and which will also set the date for the final approval hearing.

### 7.2 Notice

7.2.1 Within twenty-one (21) business days after the Court issues the Preliminary Approval Order, Defendants shall provide to the Claims Administrator in electronic form, a list of each Class Member, including each person's name, last

known address (identified from Defendants' payroll records), social security number, pay frequency, number of weeks paid, determined by the paychecks received during the Class Period (weekly checks counting as one and bi-weekly checks count as two), the number of Part Time and non-Part Time workweeks, as defined herein, for which the Class Member was paid during the Class Period ("Database"). The Database shall be based on Defendants' payroll, personnel, and/or other business records and provided in a format acceptable to the Claims Administrator. Defendants agree to consult with the Claims Administrator prior to the production date to ensure that the format will be acceptable to the Claims Administrator. The Claims Administrator shall maintain the Database, and all data contained with the Database, as private and confidential and shall not disclose such data to any persons or entities other than counsel for Defendants and Class Counsel (except for the first 5 digits of the social security numbers), unless otherwise required by law. Upon production of the database, Defendants will verify that to the best of its knowledge the database is complete and accurate and provides all of the information required pursuant to this Agreement and any applicable court orders. This data is being supplied solely for purposes of the administration of the settlement and hence cannot be used by the Claims Administrator or Class Counsel for any purpose other than to administer the Settlement. The Parties agree that the information in the Database will not be used to solicit Class Members to file any claim, charge or complaint of any kind whatsoever against Defendants, or for any other purpose other than to administer the Settlement as provided herein. Upon receipt of the Database, the Claims Administrator shall check with the U.S. Postal Service National Change of Address Database and update any addresses with any new information found regarding the location of Class Members. Thirty (30) days after the Claims Administrator mails notice, the Claim's Administrator shall run a "skip-trace" of the Class Members listed as former employees in the data who have not, at that point, returned a Claim Form or otherwise contacted the Claims

1

2 Administrator.  The Claims Administrator will update the Database with all new

3 contact information found pursuant to its obligations in this paragraph.

4       7.2.2  Within forty-five (45) business days of the Preliminary

5 Approval Date, the Claims Administrator will send via first class mail the

6 Settlement Documents to the Class Members.

7       7.2.3  If any Settlement Documents are returned to the Claims

8 Administrator as undeliverable, the Claims Administrator shall run a skip-trace

9 using that Class Member's social security number in an effort to attempt to

10 ascertain the current address of the Class Member.  If such an address(es) are

11 ascertained, the Claims Administrator shall re-mail the Settlement Documents

12 within ten (10) calendar days.  If alternative addresses are obtained for a Class

13 Member, the Claims Administrator shall send the Settlement Documents to up to

14 three alternative addresses.

15       7.2.4  In order to claim his/her share of the Settlement Pool, a Class

16 Member must submit to the Claims Administrator an executed Claim Form that is

17 postmarked within ninety (90) calendar days from the initial mailing of the

18 Settlement Documents.  The Claim Form will also serve as each Class Member's

19 written consent to become a party plaintiff pursuant to Section 216(b) of the FLSA.

20 Except as provided herein, no Claim Forms will be honored if postmarked after the

21 ninety (90) calendar-day period for the filing of claims.  If, a Claim Form is timely

22 post-marked but is incomplete or otherwise deficient, the Claims Administrator will

23 send the Class Member a notice of deficiency, and the Class Member will have

24 twenty (20) calendar days following the mailing of the notice of deficiency to cure

25 the deficiency.  If a Claim Form is post-marked after the ninety (90) day period set

26 forth herein, Defendants shall have the option to determine, in its sole and absolute

27 discretion, whether or not to accept the Claim Form.  If a late submitted Claim

28 Form is accepted by Defendants, it shall be considered the same as if it had been

timely submitted.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DB1/64227369

27

Master File No. 2:09-cv-05565-JHN-MLGx

1

2      7.2.5  Class Members, except for Plaintiffs, will have forty-five (45)

3  calendar days from the date of mailing the Settlement Documents within which to

4  opt-out of the Settlement.  Class Members who wish to exercise this option must

5  timely submit a signed written request to be excluded from the Settlement to the

6  Claims Administrator ("Opt-Out Request").  The Opt-Out Request must be

7  postmarked on or before forty-five (45) calendar days from the date of mailing the

8  Settlement Documents.  Class Members who do not timely submit an executed Opt-

9  Out Request shall be part of the Settlement Class and bound by the Settlement.

10  Class Members who timely submit an executed Opt-Out Request shall have no

11  further role in the Action, and for all purposes they shall be regarded as if they

12  never were a party to this Action or a Class Member, and thus they shall not be

13  entitled to any payment as a result of this Settlement and shall not be entitled to or

14  permitted to assert an objection to the Settlement.  The Notice of Settlement shall

15  advise Class Members of their ability to opt-out of the Settlement and of the

16  consequence thereof.  Neither the Parties nor any of their counsel will solicit any

17  Class Member to submit an Opt-Out Request.

18      7.2.6  Class Members who timely submit both an Opt-Out Request and

19  a Claim shall be sent a letter by the Claims Administrator, requesting clarification

20  of the Class Member's intent.  The letter will state that, unless the Class Member

21  clarifies within seven (7) calendar days that he or she intends to opt-out, the Class

22  Member will be deemed to be a Qualified Claimant.

23      7.2.7  Class Members will have forty-five (45) calendar days from the

24  date of mailing the Settlement Documents within which to file an objection to the

25  Settlement.  Only Class Members who have not filed an Opt-Out Request may

26  object to the Settlement.  To object, a Class Member must file a written objection

27  and a notice of intention to appear at the final approval hearing, send copies to the

28  Parties' Counsel as set forth in the Notice of Settlement, and appear at the Final

1

2  Approval Hearing. The Parties and their counsel agree that they will not solicit,

3  encourage, counsel or advise any individual to object to the Settlement.

4        7.2.8  A Class Member may only challenge his or her number of

5  paychecks and/or Week Worked by writing on the Claim Form the number of

6  paychecks, Weeks Worked (Part-Time and/or Non-Part Time) he or she contends to

7  have worked for Defendants during the Class Period, accompanied by supporting

8  documentation or other evidence. The number of Weeks Worked determined by

9  Defendants shall be rebuttably presumed to be correct and Defendants' records

10  shall be rebuttably presumed correct for purposes of determining if a claimant is a

11  Class Member. If the Class Member does not provide any documents or other

12  evidence, the challenge will be rejected by the Claims Administrator. All other

13  challenges will be resolved at the exclusive discretion and authority of the Claims

14  Administrator after seeking input from counsel for the Parties. The Claims

15  Administrator's decision shall be binding and non-appealable by Plaintiffs,

16  Defendants, or the Class Member. Defendants will promptly provide any

17  information or documents reasonably requested by the Claims Administrator to

18  make its determination.

19        7.2.9  Beginning two weeks after the date the Settlement Documents

20  are mailed, the Claims Administrator shall provide to Class Counsel and counsel

21  for Defendants a weekly status report which will be cumulative, reflecting the

22  names and the number of Class Members who have filed each of the following:

23  completed Claim Forms, incomplete Claim Forms, untimely Claim Forms, Claim

24  Forms returned as undeliverable, and Opt-Out Requests.

25        7.2.10  If one percent (1%) or more of the total number of Class

26  Members submit timely and valid Opt-Out Requests, then Defendants shall have

27  the option to void the Settlement. To exercise this option, Defendants must send

28  written notification to Lead Counsel within ten (10) business days of receiving a

report from the Claims Administrator following the Claims Period Deadline of the

1

2 total number of timely and valid Opt-Out Requests.  If Defendants choose to

3 exercise this option, the effect will be precisely the same as if Final Approval did

4 not occur, as discussed herein, and all Settlement Administration Costs incurred by

5 the Claims Administrator through that date will be paid by Defendants.

6 7.3 Final Approval

7   7.3.1  Prior to the Final Approval Hearing, Plaintiffs will move the

8 Court for entry of the Order of Final Approval (and associated entry of Judgment):

9 (a) certifying the Class for Settlement purposes only, (b) finding the Settlement fair,

10 reasonable, adequate, and in the best interests of the Class Members, (c) approving

11 Class Counsel's application for an award of attorneys' fees and costs, (d) approving

12 Class Representatives' applications for Service Payments, (e) approving the

13 payment of reasonable Settlement Administration Costs, and (f) dismissing the

14 Action and releasing and barring any further Released Claims by Class Members

15 who do not opt out of the Settlement.  The Parties and their counsel shall make all

16 reasonable efforts to secure entry of the Order of Final Approval.  The proposed

17 Order of Final Approval (and the associated proposed Judgment) shall be lodged

18 with the Court no later than five (5) business days before the Final Approval

19 Hearing.

20   7.3.2  Prior to the Final Approval Hearing, concurrent with the motion

21 for final approval, Class Counsel shall file a motion seeking approval of attorneys'

22 fees and costs and the proposed Service Payments to the Class Representatives as

23 set forth in the Stipulation.  Class Representatives and Class Counsel agree that

24 they shall be responsible for justifying the amount of the Service Payments and

25 attorneys' fees and costs to the Court, and they agree to submit, as appropriate, the

26 necessary materials to justify these payments.  Defendants will not oppose the

27 amount of the Service Payments and attorneys' fees and costs sought, as long as

28 they are consistent with the Stipulation.  If the Court (or any appellate court) awards

less than the amount requested for attorneys' fees and/or costs, or less than the

1

2 amount requested for the Service Payments for the Class Representative as set forth

3 in Sections 6.3 and 6.4, only the awarded amounts shall be paid and shall constitute

4 satisfaction of the obligations of Defendants under this Stipulation. However, any

5 unawarded attorneys fees/costs shall be distributed *cy pres* to a charity mutually

6 selected by the parties. If the parties do not agree on a charity within fifteen (15)

7 business days following Final Approval, the mediator, Mark Rudy, will select the

8 charity. Any unawarded Service Payment amounts shall remain the property of

9 Defendants.

10        7.3.3 If an appeal results in an order materially modifying, setting

11 aside, or vacating any portion of the Stipulation, with the exception of any

12 modification of the amount of attorneys' fees or costs to be paid to Class Counsel,

13 or the amount of the Service Payments paid to the Class Representatives, each party

14 adversely impacted by the order shall have the absolute right, at its sole discretion,

15 to treat such order as an event permanently preventing Final Approval. To exercise

16 this right, the party must inform the other party and the Claims Administrator, in

17 writing, of the exercise of this right, within ten (10) business days of receiving

18 notice of any order modifying, setting aside, or vacating any portion of the

19 Stipulation. Before either Party elects to exercise its right to treat such order as an

20 event permanently preventing Final Approval, that Party must meet and confer in

21 good faith with the other Party to determine if an agreement can be reached

22 modifying this Settlement to the mutual satisfaction of the Parties.

23        7.3.4 If the Final Approval or Final Judgment does not occur, or if this

24 Stipulation is terminated or canceled pursuant to its terms, the Parties to this

25 Stipulation shall be deemed to have reverted to their respective status as of the date

26 and time immediately prior to the execution of this Stipulation. In such an event, if

27 the Stipulation is not approved by the Court substantially in the form agreed to by

28 the Parties, or if the Settlement set forth in the Stipulation is terminated, cancelled,

declared void, or fails to become effective in accordance with its terms, or if the

1

2  Judgment does not become a Final Judgment, or if the Final Approval Date does

3  not occur, this Stipulation (except for those provisions relating to non-admission,

4  denial of liability set forth above, and the confidentiality agreements entered into by

5  the Parties) shall be deemed null and void, its terms and provisions shall have no

6  further force and effect with respect to the Settling Parties and shall not be used in

7  this Action or in any other proceeding for any purpose, and any Judgment or order

8  entered by the Court in accordance with the terms of the Stipulation shall be treated

9  as vacated, *nunc pro tunc*. Notwithstanding any other provision of this Stipulation,

10  no order of the Court, or modification or reversal on appeal of any order of the

11  Court, reducing the amount of any attorneys' fees or costs to be paid by Defendants

12  to Class Counsel, or reducing the amount of any Service Payments paid to the Class

13  Representatives, shall constitute grounds for cancellation or termination of the

14  Stipulation, or grounds for limiting any other provision of the Judgment.

15  7.4    Funding and Distribution of the Settlement Proceeds

16          7.4.1  Within Fifteen (15) days after the Final Approval Date,

17  Defendants shall pay the Court-approved Class Representative Service Payments,

18  the Settlement Administration Costs, and the amount needed to pay the Settlement

19  Payments, calculated pursuant to Section 6.7 above, and the amount of Attorneys'

20  Fees and Costs awarded, into the Qualified Settlement Fund set up, held and

21  controlled by the Claims Administrator. Defendants shall pay to the Claims

22  Administrator funds equal to the amount of claims by Qualified Claimants (which

23  the Claims Administrator certifies to comply with the claims process) that have not

24  been disputed as provided above, plus the amount of any claims that have been

25  disputed but that have been resolved. In the case of disputed claims, if such claims

26  are not resolved by the Effective Date, then within twenty (20) calendar days of

27  receipt of notice of the final decision with respect to such claims, Defendants shall

28  timely pay or cause to be paid those claims.

1

2        7.4.2   Within sixty (60) business days after the Effective Date, the

3   Claims Administrator shall issue Settlement Payments to Qualified Claimants in the

4   form of a check, which shall become null and void if not deposited within one

5   hundred eighty (180) days of issuance.[5]  After one hundred eighty (180) days of

6   issuance, funds from undeposited checks will be held by the Claims Administrator;

7   if the Class Member to whom the undeposited check is issued does not contact

8   Class Counsel or the Claims Administrator concerning his or her settlement

9   payment within one-hundred eighty (180) days of issuance, the Stipulation of

10   Settlement, including its release, will be binding on that Class Member, and the

11   amount of that Class Member's settlement payment shall be transmitted to the

12   Controller of the State of California, to be held and disposed of by the Controller

13   under California's Unclaimed Property Law.

14        7.4.3   Within sixty (60) business days of the Effective Date, the

15   Claims Administrator shall pay the Court-approved Attorneys' Fees and Costs to

16   Lead Counsel or a trust account designated by Lead Counsel.  Lead Counsel shall

17   provide to the Claims Administrator, with a copy to Defendants, the pertinent

18   taxpayer identification number and Form W-9 within ten (10) business days after

19   the Effective Date.

20        7.4.4   Within sixty (60) business days of the Effective Date, the

21   Claims Administrator shall send a check by mail for the Court-approved Service

22   Payments to the Class Representatives care of Class Counsel.

23        7.4.5   Upon the Final Approval Date, the claims in the Action will be

24   dismissed with prejudice on a class-wide basis.

25   8.   **MISCELLANEOUS PROVISIONS**

26

27

---

[5] In the event of any appeal of attorneys fees, costs, or the Final Judgment, the Claims Administrator shall ensure that
28   the monies in the QSF are in an interest bearing account.  Any settlement, attorneys fees, or costs payments made
      thereafter to Qualified Claimants or Lead Counsel will include the pro-rated interest earned from the date of the
      notice of appeal until 30 days prior to the settlement payment.

.1

2      8.1    Neither the acceptance nor the performance by Defendants of the terms
3   of this Stipulation, nor any of the related negotiations or proceedings, is or shall be
4   claimed to be, construed as, or deemed to be, an admission by Defendants of the
5   truth of any of the allegations in the Consolidated Complaint, the representative
6   character of the Action, the validity of any of the claims that were or could have
7   been asserted by any of Plaintiffs and/or Class Members in the Action, or of any
8   liability or guilt of Defendants in the Action. Nothing in this Stipulation shall be
9   construed to be or deemed an admission by Defendants of any liability, culpability,
10  negligence, or wrongdoing toward Plaintiffs, the Class Representatives, the Class
11  Members, or any other person, and Defendants specifically disclaim any liability,
12  culpability, negligence, or wrongdoing toward Plaintiffs, the Class Representatives,
13  the Class Members, and any other person. Each of the Parties has entered into this
14  Stipulation with the intention to avoid further disputes and litigation with the
15  attendant inconvenience, expenses, and contingencies.

16     8.2    The Parties agree to cooperate fully with one another to accomplish
17  and implement the terms of this Settlement. Such cooperation shall include, but not
18  be limited to, execution of such other documents and the taking of such other action
19  as may reasonably be necessary to fulfill the terms of this Settlement. The Parties
20  to this Settlement shall exercise reasonable efforts, including all efforts
21  contemplated by this Settlement and any other efforts that may become necessary
22  by Court order, or otherwise, to effectuate this Settlement and the terms set forth
23  herein.

24     8.3    Unless otherwise specifically provided herein, all notices, demands, or
25  other communications given hereunder shall be in writing and shall be deemed to
26  have been duly given as of the third business day after mailing by United States
27  certified mail, return receipt requested, addressed as follows:

28             To the Plaintiff Class:

MORGAN, LEWIS &
BOCKIUS LLP               Randy Renick
ATTORNEYS AT LAW
LOS ANGELES      DB1/64227746.9                    34              Master File No. 2:09-cv-05565-JHN-MLGx

1

2   Hadsell Stormer Keeny Richardson & Renick, LLP
    128 N. Fair Oaks Avenue
3   Pasadena, CA 91103

4
    To Defendants:
5
    Anne Marie Estevez
6   Morgan, Lewis and Bockius LLP
    5300 Wachovia Financial Center
7   200 South Biscayne Boulevard
    Miami, Florida 33131
8
    John Battenfeld
9   Morgan, Lewis and Bockius LLP
    300 South Grand Avenue
10  Twenty-second Floor
    Los Angeles, CA 90071-3132
11

12      8.4     The Parties hereto agree that the terms and conditions of this

13  Stipulation of Settlement are the result of lengthy, intensive, arm's-length

14  negotiations between the Parties and that this Stipulation shall not be construed in

15  favor of or against any party by reason of the extent to which any party or its

16  counsel participated in the drafting of this Stipulation.

17      8.5     Plaintiffs and Class Counsel agree that they will not issue any press

18  releases, initiate any contact with the press, or provide any information to the press

19  about this case. As an absolute condition of this Agreement, Class Counsel will not

20  post anything on their website relating to this matter, except that Lead Class

21  Counsel may post the Settlement Documents on their website for one hundred and

22  twenty (120) days after the date that the Settlement Documents are mailed by the

23  Claims Administrator, at the end of which time, both of the Settlement Documents

24  must be removed from Lead Class Counsel's website. Any communication about

25  the Settlement to Class Members other than Plaintiffs prior to the Court-approved

26  mailing will be limited to a statement that a settlement has been reached and the

27  details will be communicated in a forthcoming Court-approved notice.

28      8.6     Each Plaintiff shall refrain from making any disparaging oral or

written statements concerning any of the Defendants. Each Plaintiff shall also

DB1/64227746.9          35          Master File No. 2:09-cv-05565-JHN-MLGx

1 refrain from taking any action, directly or indirectly, which he/she knows or
2 reasonably should know to be disparaging concerning Defendants. Each Plaintiff's
3 promises in this subparagraph include any statements made to the media. Each
4 Plaintiff promises in this subsection, however, shall not apply to any judicial or
5 administrative proceeding in which such Plaintiff is a party or has been subpoenaed
6 to testify under oath by a government agency or by any third party.

7    8.7    The Class Representatives, by signing this Stipulation, are bound by
8 the terms herein and further agree not to request to be excluded from the Settlement
9 and not to object to any terms of this Stipulation. Any such request for exclusion or
10 objection shall therefore be void and of no force or effect. Defendants, Class
11 Counsel, and the Class Representatives waive their rights to file an appeal, writ, or
12 any challenge whatsoever to the terms of this Stipulation, except Plaintiffs and their
13 counsel have the right to appeal any order denying, in whole or in part, its
14 application for the award of attorney's fees and costs and/or Plaintiffs' Service
15 Payments.

16    8.8    Neither Class Counsel nor any other attorneys acting for, or purporting
17 to act for, the Class, Class Members, or Plaintiffs, may recover or seek to recover
18 any amounts for fees, costs, or disbursements from the ARAMARK Releasees or
19 the Maximum Settlement Amount except as expressly provided herein.

20    8.9    This Stipulation may not be changed, altered, or modified, except in
21 writing signed by the Parties hereto and approved by the Court. This Stipulation
22 may not be discharged except by performance in accordance with its terms or by a
23 writing used by the Parties hereto.

24    8.10    This Stipulation shall be binding upon and inure to the benefit of the
25 Parties hereto and their respective heirs, trustees, executors, administrators,
26 successors, and assigns.

27    8.11    Because the proposed Class has not yet been certified, and the
28 members of the proposed Class are so numerous, the Parties agree that it is

1
2   impossible or impractical to have each Class Member sign this Stipulation. It is
3   agreed that, for purposes of seeking approval of the Class Settlement, this
4   Stipulation of Settlement may be executed on behalf of the proposed Class by Class
5   Counsel.

6       8.12   This Stipulation shall become effective upon its execution by all of the
7   undersigned. The Settling Parties may execute this Stipulation in counterparts, and
8   execution of counterparts shall have the same force and effect as if all Settling
9   Parties had signed the same instrument.

10      8.13   The Court shall retain jurisdiction with respect to the implementation
11  and enforcement of the terms of the Stipulation, and all Parties hereto submit to the
12  jurisdiction of the Court for purposes of implementing and enforcing the Settlement
13  embodied in the Stipulation. Any action to enforce this Stipulation shall be
14  commenced and maintained only in the Court.

15      8.14   Paragraph titles or captions contained in the Stipulation are inserted as
16  a matter of convenience and for reference, and in no way define, limit, extend, or
17  describe the scope of this Stipulation, or any provision thereof.

18          IN WITNESS WHEREOF, this Stipulation of Settlement is executed
19  by the Parties and their duly authorized attorneys, as of the day and year herein set
20  forth.

21

22
23  DATED: _3 - 10_____, 2010                Genaro Morales, Plaintiff

24  DATED: _____, 2010
25                                           Ricky Silva, Plaintiff
26  DATED: _____, 2010
                                             Christian Sanchez, Plaintiff
27  DATED: _____, 2010
28                                           Camille Lewis, Plaintiff
    DATED: _____, 2010
                                             Kristina Le-Nguyen, Plaintiff

impossible or impractical to have each Class Member sign this Stipulation. It is agreed that, for purposes of seeking approval of the Class Settlement, this Stipulation of Settlement may be executed on behalf of the proposed Class by Class Counsel.

8.12 This Stipulation shall become effective upon its execution by all of the undersigned. The Settling Parties may execute this Stipulation in counterparts, and execution of counterparts shall have the same force and effect as if all Settling Parties had signed the same instrument.

8.13 The Court shall retain jurisdiction with respect to the implementation and enforcement of the terms of the Stipulation, and all Parties hereto submit to the jurisdiction of the Court for purposes of implementing and enforcing the Settlement embodied in the Stipulation. Any action to enforce this Stipulation shall be commenced and maintained only in the Court.

8.14 Paragraph titles or captions contained in the Stipulation are inserted as a matter of convenience and for reference, and in no way define, limit, extend, or describe the scope of this Stipulation, or any provision thereof.

IN WITNESS WHEREOF, this Stipulation of Settlement is executed by the Parties and their duly authorized attorneys, as of the day and year herein set forth.

DATED: _____, 2010

Genaro Morales, Plaintiff

DATED: 18 March 2010, 2010

Ricky Silva, Plaintiff

DATED: _____, 2010

Christian Sanchez, Plaintiff

DATED: _____, 2010

Camille Lewis, Plaintiff

DATED: _____, 2010

Kristina Le-Nguyen, Plaintiff

1
2   impossible or impractical to have each Class Member sign this Stipulation.  It is
3   agreed that, for purposes of seeking approval of the Class Settlement, this
4   Stipulation of Settlement may be executed on behalf of the proposed Class by Class
5   Counsel.
6       8.12   This Stipulation shall become effective upon its execution by all of the
7   undersigned.  The Settling Parties may execute this Stipulation in counterparts, and
8   execution of counterparts shall have the same force and effect as if all Settling
9   Parties had signed the same instrument.
10      8.13   The Court shall retain jurisdiction with respect to the implementation
11  and enforcement of the terms of the Stipulation, and all Parties hereto submit to the
12  jurisdiction of the Court for purposes of implementing and enforcing the Settlement
13  embodied in the Stipulation.  Any action to enforce this Stipulation shall be
14  commenced and maintained only in the Court.
15      8.14   Paragraph titles or captions contained in the Stipulation are inserted as
16  a matter of convenience and for reference, and in no way define, limit, extend, or
17  describe the scope of this Stipulation, or any provision thereof.
18          IN WITNESS WHEREOF, this Stipulation of Settlement is executed
19  by the Parties and their duly authorized attorneys, as of the day and year herein set
20  forth.
21
22
23  DATED: _____, 2010
                                                    _____
                                                    Genaro Morales, Plaintiff
24  DATED: _____, 2010
                                                    _____
25                                                  Ricky Silva, Plaintiff
    DATED: _Murch 11_, 2010
26                                                  _____
                                                    Christian Sanchez, Plaintiff
27  DATED: _____, 2010
                                                    _____
28                                                  Camille Lewis, Plaintiff
    DATED: _____, 2010

                                                    _____
                                                    Kristina Le-Nguyen, Plaintiff

agreed that, for purposes of seeking approval of the Class Settlement, this Stipulation of Settlement may be executed on behalf of the proposed Class by Class Counsel.

8.12   This Stipulation shall become effective upon its execution by all of the undersigned.  The Settling Parties may execute this Stipulation in counterparts, and execution of counterparts shall have the same force and effect as if all Settling Parties had signed the same instrument.

8.13   The Court shall retain jurisdiction with respect to the implementation and enforcement of the terms of the Stipulation, and all Parties hereto submit to the jurisdiction of the Court for purposes of implementing and enforcing the Settlement embodied in the Stipulation.  Any action to enforce this Stipulation shall be commenced and maintained only in the Court.

8.14   Paragraph titles or captions contained in the Stipulation are inserted as a matter of convenience and for reference, and in no way define, limit, extend, or describe the scope of this Stipulation, or any provision thereof.

IN WITNESS WHEREOF, this Stipulation of Settlement is executed by the Parties and their duly authorized attorneys, as of the day and year herein set forth.

DATED: _____, 2010

_____
Genaro Morales, Plaintiff

DATED: _____, 2010

_____
Ricky Silva, Plaintiff

DATED: _____, 2010

_____
Christian Sanchez, Plaintiff

DATED: __3/11/_____, 2010

_____
Camille Lewis, Plaintiff

DATED: _____, 2010

_____
Kristina Le-Nguyen, Plaintiff

agreed that, for purposes of seeking approval of the Class Settlement, this Stipulation of Settlement may be executed on behalf of the proposed Class by Class Counsel.

8.12   This Stipulation shall become effective upon its execution by all of the undersigned.  The Settling Parties may execute this Stipulation in counterparts, and execution of counterparts shall have the same force and effect as if all Settling Parties had signed the same instrument.

8.13   The Court shall retain jurisdiction with respect to the implementation and enforcement of the terms of the Stipulation, and all Parties hereto submit to the jurisdiction of the Court for purposes of implementing and enforcing the Settlement embodied in the Stipulation.  Any action to enforce this Stipulation shall be commenced and maintained only in the Court.

8.14   Paragraph titles or captions contained in the Stipulation are inserted as a matter of convenience and for reference, and in no way define, limit, extend, or describe the scope of this Stipulation, or any provision thereof.

IN WITNESS WHEREOF, this Stipulation of Settlement is executed by the Parties and their duly authorized attorneys, as of the day and year herein set forth.


DATED: _____, 2010

DATED: _____, 2010                    Genaro Morales, Plaintiff

DATED: _____, 2010                    Ricky Silva, Plaintiff

DATED: _____, 2010                    Christian Sanchez, Plaintiff

DATED: _____, 2010                    Camille Lewis, Plaintiff

DATED: 09/22/10 _____, 2010
                                                Kristina Le-Nguyen, Plaintiff

DATED: _____, 2010

_____
Irby Brown, Plaintiff

DATED: _____, 2010

_____
Michelle Holtz, Plaintiff


HADSELL STORMER KEENY
RICHARDSON & RENICK, LLP

DATED: 3|9 _____, 2010

By: _____
Attorneys for Plaintiffs and the
Proposed Class


DATED: Marc 9 ____, 2010

ARAMARK CORPORATION and
ARAMARK SPORTS, LLC

By: _____

Its: SUPa Assac GC


DATED: _____, 2010.

MORGAN, LEWIS & BOCKIUS LLP


By: _____
Attorneys for Defendants

# EXHIBIT B

Randy Renick, a partner with Hadsell Stormer Keeny Richardson & Renick, LLP in Pasadena, California, specializes in complex cases and class action litigation, including wage and hour, antitrust, employment, civil rights and public interest litigation.  Mr. Renick was selected as a "Rising Star" by the Los Angeles Magazine and Law & Politics Magazine for 2004 and has also been selected as a "Super Lawyer" by Los Angeles Magazine and Law & Politics Magazine each year since 2005.  He was one of only a few Plaintiff-side  Employment Lawyers selected for the "Best Lawyers in America" each year since 2007.

Mr. Renick is regularly asked to give lectures regarding public interest and class action litigation to lawyers, law students and public interest organizations; including the University of California at Los Angeles School of Law; State Bar of California Labor and Employment Section; Los Angeles County Bar Labor and Employment Section, The Coalition Against Slavery and Trafficking, and the Western Trial Lawyers Association.

Randy Renick is a graduate of Southwestern School of Law and has been specializing in complex litigation since 1995, first with Hadsell & Stormer, Inc. and from January 1, 2000 until December 31, 2007 with the Law Offices of Randy Renick.  Since January 1, 2008, Mr. Renick has been a partner with Hadsell Stormer Keeny Richardson & Renick, LLP.  During his career, Mr. Renick has been involved in a number of significant individual and class action cases, including:

- ***Wang v. Chinese Daily News***, CV-04-1498 CBM U.S. District Court for the Central District of California.  Served as Lead Counsel in a jury trial representing a class of hourly newspaper employees involving claims of unpaid overtime and other wage and hour violations.  After jury and bench trial, obtained a judgment in favor of his clients for more than $5,200,000 and attorney's fees of $3,500,000.

- ***Diaz v. ABM Industries, Inc.,*** BC362932, Los Angeles Superior Court, Lead counsel for certified class of more than 5,000 employees seeking damages for employer's failure to provide meal periods.

- ***Morales v. Aramark Corporation.,*** CV-09-05565, U.S. District Court for the Central District of California. Lead Counsel for class of more than 7,000 food service workers alleging claims for meal and rest period, and overtime violations.

- ***Navarro v. Pacifica Hosts Hotels, Inc.,*** BC352017, Los Angeles Superior Court. Lead counsel for class of more than 4,000 hourly employees at 19 hotels in California with claims of unpaid overtime, missed meal and rest breaks.  Matter settled for $6,500,000.

- ***John Amaro v. the Ritz-Carlton, Huntington Hotel & Spa;*** BC 376739, Los Angeles Superior Court.  Lead Counsel for class of 800 hotel workers alleging employer failed to pay wages and provide meal and rest breaks.  Settled case for $975,000.

- ***Soto v. Starwood Hotels & Resorts Worldwide, Inc.***, BC 352849,  Los Angeles Superior Court.   Represented class of hourly hotel workers at Westin LAX hotel alleging meal and rest break and overtime violations.  Settled for $3,000,000.

- ***Hernandez v. Tyco International (US) Inc.***, BC315749, Los Angeles Superior Court.  Represented class of 450 hourly production employees with claims for unpaid overtime, meal and rest break violations.  Case resolved with settlement of $4,900,000.

- ***Rogers v. Weyerhaeuser Corp.***, CV-05-06076 NM, U.S. District Court for the Central District of California.  Represented class of 125 hourly employees alleging meal and rest break and overtime violations against employer. Settled in 2005 for $1,500,000.

- ***Pinney v. Great Western Bank***, BC 146276 and CV-95-2110-IH, U.S. District Court for the Central District of California and LA Superior Court.  Served as counsel in securities fraud and invasion of privacy class action.  The matter settled for more than $16 Million.

- ***Levitan v. TV Fanfare Media Inc.,*** BC 241713, Los Angeles Superior Court. Served as Lead Counsel in Wage and Hour Class Action Case representing class of individuals mis-classified as Independent Contractors.  Los Angeles Superior Court Judge Charles W. McCoy granted final approval to the $1.85 Million settlement in April of 2004.

- ***Ruiz v. Jackson,*** SC076090, Los Angeles Superior Court.  Obtained jury verdict of $825,000 on behalf of Philippina plaintiff brought to Los Angeles and forced to work 18 hours per day for more than one year without pay.  Prevailed on all claims including false imprisonment, fraud, assault, battery and negligence against defendants, one of whom was a lawyer and executive at Sony Pictures.  Jury found that the defendants had wrongfully imprisoned Plaintiff by means of violence and threats.

- ***Paige v. State of California***, CV 94-0083 CBM  U.S. District Court for the Central District of California.  Served as Co-Lead Trial Counsel in two month class action trial involving claims against California Highway Patrol alleging discrimination in promotions against Non-White Officers.

- ***Mesfun v. Hagos***, CV 93-02182 MMM U.S. District Court for the Central District of California.  Served as Lead Counsel in jury trial involving allegations of False Imprisonment and Labor Code Violations in front of Judge Margaret Morrow.  Obtained a jury verdict on Labor Code claim against Defendant.

Mr. Renick also has substantial experience litigating antitrust class action cases in both state and federal courts.  Mr. Renick is intimately familiar with the management and organization required to aggressively litigate complicated class action cases involving multiple cases and numerous co-counsel.  Some of the antitrust matters in which he has served as counsel include.

- ***In Re Dynamic Random Access Memory Antitrust Litigation***, MDL 1486 (Judge Hamilton) United States District Court, Norther District of California (antitrust class action on behalf of direct purchasers of dynamic random access memory (DRAM) alleging a nationwide class for price-fixing), The case settled for more than $330,000,000.

- ***Vitamin Cases***, J.C.C.P. No. 4076, San Francisco Superior Court (antitrust class

action on behalf of California indirect purchasers of vitamins).  The case was settled for $96,000,000.

• ***California Indirect Purchaser MSG Antitrust Cases***, Master File No. 304471, San Francisco Superior Court (antitrust class action on behalf of California indirect purchasers of Monosodium Glutamate).  The case settled for more than $11,000,000.

• ***In Re Methionine Antitrust Litigation***, MDL 1311, CRB, United States District Court, Northern District of California.  A nationwide class action on behalf of direct purchasers of methionine alleging price-fixing. The case was settled for $107,000,000.

• ***In re California Polychloroprene Cases***, J.C.C.P. 4376, Los Angeles Superior Court.  Statewide class on behalf of indirect purchasers for Polychloroprene.  The matter settled for in excess of $4,500,000.

• ***In Re Urethane Cases***, J.C.C.P. No. 4367, San Francisco Superior Court (antitrust class action on behalf of all California indirect purchasers of urethane and urethane chemicals).

• ***The Harman Press et al. v. International Paper Co. et al.***, (Consolidated Cases) Master File No. CGC-04-432167, San Francisco Superior Court (antitrust class action on behalf of all California indirect purchasers of publication paper).

• ***In Re Label Stock Cases***, J.C.C.P. No. 4314, San Francisco Superior Court (antitrust class action on behalf of all California indirect purchasers of high pressure label stock).

• ***Richard Villa et al. v. Crompton Corporation et al.,*** Consolidated Case No. CGC-03-419116, San Francisco Superior Court (antitrust class action on behalf of California indirect purchasers of EPDM).

• ***Russell Reidel et al. v. Norfalco LLC et al.,*** Consolidated Case No. CGC-03-418080, San Francisco Superior Court (antitrust class action on behalf of California indirect purchasers of sulfuric acid).

• ***Smokeless Tobacco Cases I-IV***, J.C.C.P. Nos. 4250, 4258, 4259 and 4262, San Francisco Superior Court (certified antitrust class action on behalf of California consumers of smokeless tobacco products) The case settled for $99,000,000.

• ***Electrical Carbon Products Cases***, J.C.C.P. No. 4294, San Francisco Superior Court (Private Entity Cases) (antitrust class action on behalf of California indirect purchasers of electrical carbon products).

• ***In Re Laminate Cases***, J.C.C.P. No. 4129, Alameda Superior Court (antitrust class action on behalf of California indirect purchasers of high pressure laminate).

• ***Compact Disk Cases***, J.C.C.P. No. 4123, Los Angeles Superior Court (antitrust

class action on behalf of California consumers of prerecorded compact disks settled for more than $100,000,000).

•   ***California Indirect Purchaser Auction House Cases***, Master Case No. 310313. San Francisco Superior Court (antitrust class action on behalf of California auction buyers and sellers).

•   ***In Re Western States Wholesale Natural Gas Litigation***, MDL 1566 (antitrust class action on behalf of California buyers of natural gas).

•   ***In Re NBR Cases***, J.C.C.P. No. 4369, San Francisco Superior Court (antitrust class action on behalf of California indirect purchasers of NBR).

•   ***In Re Intel Corp. Microprocessor Antitrust Litigation***, MDL 05-1717 (JJF) USDC, District of Delaware (antitrust class action on behalf of all consumers in the United States that indirectly purchased Intel x86 microprocessors).

•   ***In Re Vitamin C Antitrust Litgation***, MDL 06-1738 (DTG)(JO), USDC, Eastern District of New York (antitrust class action on behalf of all California indirect purchasers of Vitamin C).